440 A.2d 562
COMMONWEALTH of Pennsylvania,

v.

Edward J. DEVLIN, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 23, 1981.
Filed Jan. 19, 1982.
Petition for Allowance of Appeal Denied April 30, 1982.

472

Lawrence A. Kalikow, Assistant Public Defender, Harrisburg, for appellant.

William A. Behe, Deputy District Attorney, Harrisburg, for Commonwealth, appellee.

Before BROSKY, McEWEN and BECK, JJ.

BECK, Judge:

Appellant was convicted, in a non-jury trial, on two counts of Arson—Endangering Property. He was sentenced to a prison term of five to fifteen years, said sentence to run concurrently with that imposed on a prior conviction.

The sole evidence presented at trial to connect appellant directly with the fires consisted of entries in a diary. The appellant challenges the refusal of the trial judge to suppress the diary. In addition, appellant claims that there was insufficient evidence presented by the Commonwealth at the Preliminary Hearing to establish a *prima facie* case, and that the testimony of the fire marshal as to the incendiary origin of one of the fires should have been stricken.

## SEIZURE OF THE DIARY

On February 8, 1980, appellant was sentenced on a prior offense, and on that date one Lorene Bryan was assigned as his probation officer. On that date, District Attorney Joseph H. Kleinfelter, the prosecutor on the prior offense, arranged to meet with the probation officer. He told her that he wanted her to be aware that appellant would require very close supervision in that Mr. Kleinfelter had learned in the course of his investigation on the weapons offense that appellant was suspected of one or more arsons occurring in 1977. He did not instruct her to look for anything, but did request that if she came across any information or found out anything, she should let him know. He had no further contact with the probation officer until March 12, 1980.

On March 11, 1980, the probation officer, seeking to verify that appellant was employed, made a telephone call to appellant's residence. Appellant was residing at the home of his mother and father, and his mother answered the telephone. During the course of the conversation, appellant's mother stated that she had found something in a notebook [1] in her son's room which alarmed her. She did not

1. Ms. Bryan testified that she was not made aware that the notebook was a diary, but was made aware in this initial conversation that it was a notebook which had alarmed appellant's mother.

state what it was. The probation officer told the mother that, as a part of her duties in ensuring appellant's compliance with the terms of his probation, she was to conduct a search of appellant's residence, and that she would do so no later than the following day and would then inspect what it was that appellant's mother had found.

Following the telephone conversation, Ms. Bryan told her supervisor what the mother had said, a staff meeting was held, and it was decided that Ms. Bryan should conduct a search, should examine the notebook, and should bring the notebook back to her office and copy any portion revealing a violation of probation.

On the same day, March 11, 1980, the probation officer went to the appellant's home and was admitted by his mother. His mother expressed apprehension that a search was being conducted in appellant's absence, and the probation officer explained that she was authorized to make such a search and to make it without a search warrant.

Appellant's mother then took Ms. Bryan to the room where appellant slept and kept his things. Ms. Bryan conducted a search of the room. The notebook the mother had referred to was identified by her as being one found by Ms. Bryan in the drawer of the nightstand. Ms. Bryan glanced through it briefly, but being pressed for time, told appellant's mother she would take it to her office where she could read it at leisure and return it to the mother later. She told the mother she would copy "parts of it" and the mother consented. One of the thoughts that went through Ms. Bryan's mind when she took the notebook, and before she read it, was that it might contain evidence linking appellant with the 1977 arson Mr. Kleinfelter had spoken of.

When Ms. Bryan reviewed the notebook in her office, she found dated entries. Among these dated entries was an entry dated February 24, 1980 describing his setting a fire earlier at Third and Sayford Street, Harrisburg and, later that night, a fire in the 1900 block of north Sixth Street. She photocopied these portions and returned the diary to appellant's mother on March 12. Ms. Bryan showed the

photocopies to her supervisor, and together they met with District Attorney Kleinfelter. The office of the city fire marshal confirmed that two fires listed as being of incendiary origin had occurred at those locations at that time. Mr. Kleinfelter prepared an affidavit which stated:

> On this date, March 12, 1980, Dauphin County Probation Officer, Lorene Bryan, visited the above stated residence of Edward J. Devlin in Steelton in her capacity as Devlin's probation officer. While making an examination of Devlin's bedroom, she viewed various notes and a diary written by Devlin which contained an admission by him to having set a fire in . . . Harrisburg shortly after midnight on February 23–24, 1980. The aforegoing information was conveyed to the affiant below.

Fire Marshal Elmer W. Shover had meanwhile informed Corporal Lesko of the Bureau of Police that he was to report for duty with regard to investigation of the arsons. Corporal Lesko went to Mr. Kleinfelter's office and received the already prepared affidavit from him, executed it, and on this basis obtained a search warrant from the District Justice. Mr. Kleinfelter, Mr. Shover, a county detective, Ms. Bryan's supervisor and Corporal Lesko then went to appellant's home, read the search warrant to appellant's mother, and asked appellant's mother if she had the diary. She conducted Mr. Kleinfelter, Mr. Shover and the county detective to the second floor and gave them the diary.

At trial, a handwriting expert identified the handwriting in the diary, including the inculpatory entries, as that of appellant.

   (a) The Affidavit was properly accepted as showing probable cause for the issuance of a search warrant.

    Appellant contends that the presence in the affidavit of the phrase "information was conveyed to the affiant" in the absence of a statement as to how it was conveyed, combined with the fact that the officer who executed the affidavit did not personally speak with Ms. Bryan, renders the affidavit deficient under the test set forth in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) in

that it does not show that the information is reliable. Appellant argues that the failure to reveal the full chain of information left the possibility that an unreliable informant had made up the story of what Lorene Bryan had done and seen. However, the crucial "informant" here is not Mr. Kleinfelter, whose role in the chain of information was omitted from the affidavit, but Lorene Bryan, a Dauphin County Probation Officer. The issuing authority was clearly entitled to rely upon her as a reliable informant. The fact that the affidavit did not reveal the passage of the information through Mr. Kleinfelter does not render the affidavit unreliable. Mr. Kleinfelter was, in fact, a person upon whom the police officer, signing as amanuensis, was entitled to rely in asserting that Ms. Bryan had conveyed the information. In *Commonwealth v. Musi*, 486 Pa. 102, 404 A.2d 378 (1979), the officer who signed the affidavit accepted the information from another police officer at the scene and had not personally spoken with the informant. The appellant therein similarly attacked the affidavit as "double hearsay" failing to show probable cause. The Court rejected the argument, stating:

Here, the officer supplying the information for the affidavit possessed the requisite information to satisfy the probable cause requirements. The fact that he delegated the responsibility of placing this information in affidavit form and the securing of the warrant from the issuing authority is of no consequence, where the affidavit accurately reflects the information possessed by the officer and that information satisfies the probable cause requirement.

*Id.*, 486 Pa. 113, 404 A.2d at 383.

The crucial test is whether the affidavit does accurately reflect the actual information and the source which is relied upon to show probable cause. As recently stated in *Commonwealth v. Stamps*, 493 Pa. 530, 427 A.2d 141, 144 (1981)

[W]e recognize that affidavits supporting search warrants normally are prepared . . . 'in the midst and haste of a criminal investigation'. . . . They . . . should be interpreted in a 'common sense and realistic' fashion rather than in a hypertechnical manner. citations omitted.

The police officer who executed the affidavit received the description of Lorene Bryan's information from a wholly reliable source. Lorene Bryan herself was clearly a reliable informant. *Cf. Commonwealth v. Barrett*, 233 Pa.Super. 523, 335 A.2d 476 (1975). The issuing authority was given accurate information, and that information was sufficient to form the basis for an assessment of the reliability of the source of the information. The search warrant was therefore properly issued.

  (b) The initial search by the probation officer and her examination of the diary did not constitute an unlawful search and seizure.

Appellant argues that the information which formed the basis for the search warrant which produced the diary as evidence would not have been available had it not been for the prior search and seizure by Lorene Bryan. Appellant further argues that because the District Attorney had previously requested that the probation officer tell him of any information of which she might become aware which related to new crimes, and the fact that the thought of that conversation crossed her mind when she saw the diary in appellant's room, her review and photocopying of the diary constituted an unconstitutional search and seizure, of which the diary as evidence was the ultimate fruit.

■ In *Commonwealth v. Brown*, 240 Pa.Super. 190, 361 A.2d 846 (1976), this court held that "when performing his normal duties, a parole agent is not required to obtain a search warrant" in order to make a routine, supervisory search of the parolee's residence. One who has been placed on probation [2] in being sentenced after conviction of a crime

---

**2.** *Commonwealth v. Brown, supra* and *Commonwealth v. Berry*, 265 Pa.Super. 319, 401 A.2d 1230 (1979) involved parole officers supervising one who had served at least a minimum term of incarceration and were released on parole under certain specified conditions. The instant case differs in that appellant herein was under a probationary sentence pursuant to 42 Pa.C.S. Section 9722. "Probation" is a period of trial or testing, in the instance of criminal probation of testing of whether the probationer does in fact meet the criteria set forth in Section 9722, including the likelihood of affirmative response to probationary treatment. Close supervision is a necessity under

is as much under the supervision of the state as is one who is sentenced to incarceration. A probation officer is entitled to search the belongings of such an individual to ensure that they do not reveal a violation of the terms of probation. In the present instance, the probation officer did not plan such a search until she received information that appellant's mother was "alarmed" by something appellant had written in a notebook. This information clearly did not rise to the level of probable cause for issuance of a search warrant. However, the authority of the probation officer to make a search was certainly no less as a result of receipt of such information than it would have been without such information. Thus, she was entitled to search appellant's room.

■ Appellant argues, however, that his mother would not have shown the diary to Ms. Bryan had not Ms. Bryan informed her that the search was lawful without a search warrant, thus "coercing" his mother to cooperate in the search. The flaw in this argument is that Ms. Bryan was speaking the truth. In *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), police officers informed the suspects' grandmother that they had a warrant when in fact they did not. Such conduct has consistently been held to vitiate any consent given. Here, the search did not rely upon consent for its validity. The initial information concerning the existence of the notebook was volunteered by the mother on the telephone, and the later identification of the notebook in the drawer of the nightstand cannot be seen as flowing from the representation of authority to make a search. No representation was made that the mother was under compulsion to aid in the search.

The final question is whether the probation officer exceeded the bounds of her duties when she removed the diary

such circumstances, and the Fourth Amendment rights of the probationer are clearly diminished to the extent necessary to meet this necessity. While not totally abrogated, as are those of the individual sentenced to incarceration during incarceration, the Fourth Amendment rights of one under sentence of probation must give way to the necessity for ensuring that incarceration for some period is not a necessity for the protection of society.

from the room, read it in her office, and made photocopies of the pages. We find no evidence that Ms. Bryan "changed hats" when she removed the notebook. At that point, she did not know what was in it other than that something had alarmed appellant's mother. The passing memory of her conversation with the District Attorney does not alter the situation, since anyone in her position would have realized that the notebook might reveal a new weapons offense, might reveal information regarding the arsons of which the District Attorney had spoken, or might reveal nothing. In fact, it did none of these, for it revealed information regarding two acts of arson which had occurred since her conversation with the District Attorney. The point at which *Commonwealth v. Brown, supra*, and *Commonwealth v. Berry, supra*, held that a search warrant must be obtained was the point at which a search warrant was obtained: after the contents of the diary were known to consist of matter which related to crimes for which prosecution was likely to be instituted.

The important question remains as to whether the removal of the evidence to her office and its return to the home for immediate seizure under search warrant alters the otherwise lawful progression of the seizure of this evidence. We do not find any authority directly on point. We must certainly act with caution in finding evidence properly admissible when that evidence has been in the possession of an officer of the state prior to its seizure under warrant. Under any circumstance where the state could alter its burden of proof by its dealing with evidence in its possession, other considerations would enter into a determination of a suppression motion.[3] In the present instance, however, we are dealing with written matter which could only be used

---

**3.** For example, had the evidence sought to be suppressed consisted of contraband and had possession been an element which the Commonwealth had the burden to prove, the interim possession of the evidence by an officer of the Commonwealth would create a very different problem from the one presented here. In the instant case, possession of the diary was not the element which the Commonwealth had to prove, but rather authorship.

as evidence against the appellant in the event the prosecution could prove that it was written by the appellant. This burden could not be changed in any way by the authorities of the state in their conduct toward the evidence while in their possession. Substitution for, or alteration of, the notebook would not aid the prosecution in proving its case in any way.

We conclude, based upon the appellant having been an individual sentenced to a term of probation upon conviction of a felony with resultant diminished Fourth Amendment rights during the term of his probation, that the search and seizure were lawfully conducted and there was no error in refusal to suppress the diary.

## CHALLENGED EVIDENCE

At the Preliminary Hearing of appellant in this case, the fire marshal testified to the occurrence of the fires and that they had been listed as being of incendiary origin. Officer Lesko testified to the service of the search warrant and identified the diary as having been produced by the mother as the "personal notes and diary of Edward J. Devlin" in response to the warrant. He read the inculpatory statements and also referred to portions of the diary which related circumstances known to be related to appellant. No other evidence was introduced connecting appellant with the crimes. Appellant claims that the failure to authenticate the diary at that hearing resulted in a failure to show a prima facie case. We find this argument to be without substance. There was sufficient evidence presented to create a reasonable belief that the diary was that of appellant in that it was produced as such by his mother and in that it contained details of his life which were known. The Commonwealth is not required to prove guilt beyond a reasonable doubt at the preliminary hearing, but rather is required to establish that there is sufficient probable cause to believe that a crime has been committed and that the accused is the

one who committed it in order to protect the accused from unlawful detention. See *Commonwealth v. Prado*, 481 Pa. 485, 393 A.2d 8, 10 (1978), *Commonwealth v. Beatty*, 281 Pa.Super. 85, 421 A.2d 1159, 1162 (1980).

■ Finally, appellant claims that the testimony of the fire marshal concerning the fire which formed the basis for one of the two counts of which he was convicted should have been stricken. As to the said fire, the fire marshal testified as to its occurrence and stated that, although he was not present at the fire or immediately thereafter, that within approximately one week of the fire, he had inspected the site, had found the fire to have originated in a closet where some trash had been piled, and that it was his opinion that the fire was of incendiary origin. On cross-examination, he stated that he did not find any trace of any accelerant, and that he could not identify the specific instrumentality which had started the fire, that it could have been a match or a lighter or a cigarette. He did state that he ruled out spontaneous combustion on the basis of the location and the materials. He reiterated that it was his opinion that the fire was of incendiary origin and that he based his conclusion on the physical evidence that he observed at the scene. Fire Marshal Shover was acknowledged by the defense to possess the necessary expertise to form an expert opinion as to the origin of a fire. As in *Commonwealth v. Rigler*, 488 Pa. 441, 412 A.2d 846, 851 (1980):

> [T]he record discloses [the expert witness] directed the investigation of the scene ... personally examined the [site] .... This was certainly sufficient information upon which to base his opinion.

Defense counsel thoroughly explored the basis for the opinion and was given full scope in exposing any weakness in the conclusion. It was therefore not error to refuse to strike this testimony.

Judgment of sentence affirmed.