## In the Interest of Jomo McAdory

*D. Sherwood Jones*, for the commonwealth.
*Joseph T. Kownacki*, for the defendant.

ANTHONY, *J.*, December 19, 1986 — Currently before the court is the above-named juvenile's application to suppress fingerprint exemplars obtained by the police acting under authority of an order of this court. The order was issued pursuant to 42 Pa.C.S. §6308(c)(1), without a showing of probable cause.

The juvenile argues that section 6308(c)(1) violates both the federal and state constitutions unless it is construed to require that the court order authorizing fingerprinting be based upon a showing of probable cause. The commonwealth argues that the statute authorizes the court to enter an order to fingerprint upon the commonwealth's statement that the juvenile "is alleged to have committed a delinquent act."

Since the juvenile was on probation at the time, we must decide whether this juvenile could be fingerprinted without probable cause because he was on probation. Under the facts of this case, we find the juvenile's probationary status inconsequential.

We must then address the issue of the constitutionality of section 6308(c)(1), and we conclude that it must be construed to require a showing of probable cause. We also address the issue of whether the court has jurisdiction to enter an order to fingerprint before a petition of delinquency is filed, and we find that jurisdiction is lacking.

Finally, we address the issue of whether the officer's good-faith reliance on our court order authorizing the fingerprinting avoids the application of the exclusionary rule. We also answer this question in the negative, and order the fingerprints suppressed.

On May 23, 1986, the juvenile was brought before this court for a dispositional hearing following an adjudication of delinquency on unrelated charges. At the conclusion of the hearing, the commonwealth presented to this court an ex parte application for permission to fingerprint pursuant to 42 Pa.C.S. §6308(c)(1). The application, tracking the statutory language, stated:

"(1) That the above-named juvenile is 15 years of age or older and is alleged to have committed a delinquent act that, but for the application of the Juvenile Act, would constitute a felony or a violation of the Uniform Firearms Act.

"(2) That fingerprints have been discovered at the scene of said delinquent act.

"(3) That it is believed that said fingerprints may be those of the above juvenile."

No other facts in support of the application were presented to the court.

Upon presentment, the court issued an order authorizing the fingerprinting. Immediately thereafter, the juvenile's probation officer and a police officer took the juvenile to the sheriff's department located on the floor below. The juvenile's fingerprints were taken and he was released.

On July 22, 1986, a petition alleging delinquency was filed charging the juvenile with burglary, 18 Pa.C.S. §3502, and theft by unlawful taking, 18 Pa.C.S. §3921. An adjudication hearing was held before a master on September 19, 1986. Over defendant's objection, the commonwealth presented the testimony of a fingerprint expert who linked the juvenile's fingerprints to those found at the scene of the crime. Prior to the conclusion of the commonwealth's case, the matter was continued. On September 30, 1986, the juvenile was sent notice that the continued hearing was scheduled for October 22, 1986. On October 21, 1985, the juvenile filed the application to suppress currently at issue.

## MOTION TO DISMISS JUVENILE'S APPLICATION AS UNTIMELY

The commonwealth argues that the juvenile's motion to suppress should be dismissed as untimely. The commonwealth cites Pa.R.Crim.P. 323 for the proposition that the issue of suppression is waived if not timely filed. However, these rules are inapplicable to juvenile proceedings. *Stoutzenberger Appeal*, 235 Pa. Super. 500, 503, 344 A.2d 668, 670 (1975); Pa.R.Crim.P. 1(a).

Due to the importance of the issue involved, the lack of clear guidelines on the time within which a juvenile must file a motion to suppress, and the commonwealth's failure to allege any prejudice resulting from the delay in filing the motion, we will deny the commonwealth's motion to dismiss.

## ARREST AND SEIZURE OF THE JUVENILE

The next issue we consider is whether the juvenile was placed under arrest at the time he was fingerprinted.

"An arrest may be accomplished by any act that indicates an intention to take a person into custody and subjects him to the actual control and will of the person making the arrest.

"Under this standard, an arrest may be effectuated without the actual use of force and without a formal statement to the detainee that he is being arrested." *Commonwealth v. Farley*, 468 Pa. 487, 494-95, 364 A.2d 299, 302 (1976) (citations omitted) See also *Commonwealth v. Woodson*, 342 Pa. Super. 392, 395, 493 A.2d 78, 79 (1985).

The commonwealth points out that the juvenile did not protest, and that the entire incident was over in minutes. We find that neither of these factors suggests that the juvenile was not under arrest. Furthermore, the commonwealth does not suggest that the juvenile consented to the seizure.

The juvenile was taken to be fingerprinted by his probation officer and a police officer acting under the authority of a court order. A reasonable person would consider objection futile. The fact that the incident was over in minutes arises only from the fortuitous circumstance that the fingerprinting facilities were in close proximity to the location of the dispositional hearing. We hold that, under these circumstances, the juvenile was in custody and under arrest from the time the dispositional hearing was concluded until the time the fingerprinting was completed.

## AUTHORITY TO TAKE JUVENILE INTO CUSTODY

Section 6324 provides the authorization for taking a juvenile into custody. The three relevant situations in which a juvenile may be taken into custody are (1) pursuant to an order of court, (2) pursuant to the laws of arrest, and (3) if a law enforcement officer or a duly authorized officer of the court (e.g., a

probation officer) has reasonable grounds to believe that the child has violated the conditions of his probation.[1]

*Relevance of juvenile's probationary status*

We turn first to the issue of whether the juvenile was taken into custody on the belief that he had violated the conditions of his probation.

There is a conflict among both the state and the U.S. Circuit courts on the issue of whether a parole or probation officer can conduct a search of a parolee's or probationer's home or property without complying with the warrant requirement. See *Souders v. Kroboth,* 547 F. Supp 187, 190 (E.D.Pa. 1982) (collecting cases); *Annot.,* 32 A.L.R.Fed. 155 (1977).

In addressing this issue, our Superior Court has recognized a distinction between cases in which a parole or probation officer conducts a search upon the belief that there has been a parole or probation violation, and cases in which the search was conducted to gather evidence of new crime.[2] In the former cases, the search is legal, even absent a warrant or probable cause. In the latter cases, the parolee or probationer enjoys the full panoply of Fourth Amendment rights, and the search, to be legal, must be pursuant to a warrant supported by probable cause.

A search, like a felony arrest, must be based upon probable cause, the only difference being that a search generally requires a warrant, while a felony

---

1. The two remaining situations pertain to dependent, rather than delinquent, children. 42 Pa.C.S. §§6324(3), 6324(4).

2. Generally, parolees and probationers are entitled to the same substantive rights. See e.g., *Williams v. United States,* 412 F.Supp. 277, 289 (E.D. Pa. 1976).

arrest can be made without a warrant.[3] Thus, we find the search cases analogous to our seizure case in that if a probation officer can search a probationer's property without a warrant, and thus without probable cause, then a probation officer can arrest his probationer for a felony without probable cause to believe that the felony occurred and the probationer committed it.

Our Superior Court has considered the search issue in three cases, the first of which is *Commonwealth v. Brown,* 240 Pa. Super. 190, 361 A.2d 846 (1976). In *Brown,* the defendant, who was arrested for burglary while on parole, moved to suppress evidence seized during a warrantless search of his home.

After receiving a tip from defendant's employer, from whom the goods were stolen, defendant's parole officer visited defendant's home and observed the potentially stolen goods. About two weeks later the parole agent, defendant's employer and two police officers went to defendant's house. After being admitted by defendant's mother, defendant's employer identified the stolen goods and defendant was placed under arrest.

The Superior Court reversed the lower court and ordered the evidence suppressed. The court held that "[w]hen the agent discovered the proceeds of the burglary on the initial visit to appellant's residence, he had ample basis to acquire a warrant . . . He requested the assistance of the police, and thereby, relied fully on the police power to arrest. Stated

---

3. An officer can make a felony arrest without a warrant if the officer has probable cause to believe both that a felony has been committed and that the person arrested committed it. *Commonwealth v. Freeman,* 356 Pa. Super. 332, 340, 514 A.2d 884, 888 (1986).

differently, the parole agent ceased acting as an administrator of the parole system. He was not collecting evidence in order to have appellant's parole revoked. Rather, he was acting as a police officer, involving a witness who wanted to press criminal charges and other police officers. Once he 'switched hats' and, in all relevant respects, became a police officer, the administrative justification that generally permitted him to avoid acquisition of a warrant was no longer applicable. Thus, the constitution mandated that he obtain a search warrant for appellant's premises." *Brown,* 240 Pa. Super. at 198, 361 A.2d at 850.

*Brown* was followed in *Commonwealth v. Berry,* 265 Pa. Super. 319, 401 A.2d 1230 (1979), wherein the issue again was the suppression of stolen goods discovered by a parole agent during a warrantless search.

In *Berry,* one of defendant's co-employees contacted a parole agent, but not defendant's parole agent, and informed the agent that goods stolen by defendant were located in a garage which defendant leased. The parole agent, defendant's co-employee and two police officers went to the garage, where they were admitted by the lessor. The group then conducted a two and one-half hour search which uncovered the stolen goods. A search warrant was obtained on the basis of information discovered during the initial search. The warrant provided the basis for seizing the stolen goods, which led to defendant's arrest and conviction.

Again the Superior Court ordered the evidence suppressed, finding that the initial warrantless search violated the Fourth Amendment, and thus the evidence obtained pursuant to the warrant was "fruit of the poisonous tree." The court found that "[t]here was no 'routine' element to [the parole

agent's] investigation. First and foremost, he was not even the agent assigned to appellant's supervision . . . This visit was not undertaken by [the parole agent] at appellant's residence in an effort to visit with the parolee or monitor his activities . . .

"Society's interest in protection and rehabilitation, which is sufficient to permit a diminishment of a parolee's Fourth Amendment protection, is not so broad in scope as to permit total disregard for the panoply of a parolee's Fourth Amendment rights. Exceptions to the requirement that searches are to be conducted with a warrant are to be drawn narrowly. [citation] Certainly, the exception which this court countenanced in *Commonwealth v. Brown, supra,* must be circumscribed by the rationale which wrought it. The search in the instant case was conducted in blatant disregard for appellant's privacy rights and cannot be justified under our decision in *Brown." Berry,* 265 Pa. Super. at 323-24, 401 A.2d at 1232.

The third and most recent case on this issue is *Commonwealth v. Devlin,* 294 Pa. Super. 470, 440 A.2d 562 (1982). In *Devlin,* defendant's mother, with whom defendant lived, called defendant's probation officer and informed the officer that defendant's mother found something "alarming" in her son's diary. That day the probation officer went to defendant's home and, after telling defendant's mother that she was authorized to search without a warrant,[4] the officer was taken to defendant's room where a search was conducted. The officer found

---

4. The court expressly stated that the probation officer did have the power to conduct a warrantless search of the "belongings of such an individual to ensure that they do not reveal a violation of the terms of probation." *Devlin,* 294 Pa. Super. at 478, 440 A.2d at 566. See also *Commonwealth v. Miller,* 303 Pa. Super. 504, 508, 450 A.2d 40, 42 (1982).

defendant's diary and, being pressed for time, took it to her office to copy portions thereof. The diary was returned the following day.

The entries which the officer had copied implicated defendant in several unsolved arsons. Based upon the information contained in the diary, a warrant was obtained to search defendant's house. The diary was seized pursuant to the warrant, and defendant was convicted of arson.

The question, as in *Berry*, was whether the initial search was legal. Unlike *Brown* and *Berry*, however, the *Devlin* court held the initial search a permissible exercise of the probation officer's power to ensure the probationer's compliance with the conditions of probation. The court found "no evidence that [the probation officer] 'changed hats' when she read the notebook. At that point, she did not know what was in it other than that something had alarmed appellant's mother . . . The point at which *Commonwealth v. Brown, supra,* and *Commonwealth v. Berry, supra,* held that a search warrant must be obtained was the point at which a search warrant was obtained: after the contents of the diary were known to consist of matter which related to crimes for which prosecution was likely to be instituted." *Devlin,* 294 Pa. Super. at 479, 440 A.2d at 566.

There is also one relevant common pleas decision. In *Commonwealth v. Gaito,* 3 D.&C.3d 339 (1977), the court held that "the Fourth Amendment and Article I, section 8 of the Constitution of Pennsylvania require, under the circumstances of this case, the arrest warrant of [defendant, a parolee] to be based upon probable cause." 3 D.&C.3d at 345-46. The court proceeded to find that there was probable cause to believe defendant was a technical parole

violator, and thus defendant was legally arrested pursuant to a warrant issued by the board of parole.

Turning to the case sub judice, we find that at the time the juvenile was fingerprinted the probation officer had "changed hats" and was no longer performing the administrative duties of a probation officer.

The probation officer was not collecting evidence to determine whether the juvenile's probation should be revoked, see *Brown,* 240 Pa. Super. at 198, 361 A.2d at 850. Rather, the officer was assisting the police in gathering evidence to link the juvenile with a crime then under investigation.

In *Devlin,* the probation officer's concern about possible probation violations was justified by defendant's mother's statement of "alarm" over the diary. Prior to the probation officer's first search of the diary, she had no knowledge of what evidence it may contain.

In both *Brown* and *Berry* there was sufficient evidence prior to the initial search to permit the officers to obtain a search warrant. The presence of a parole officer was viewed as a mere pretext for conducting a warrantless search for the purpose of discovering evidence not of a parole violation, but of a new crime.

In the instant case, the officers knew what the juvenile's fingerprints might reveal, since the fingerprints were taken to determine whether they matched prints found at the scene of the burglary. This fact distinguishes our case from *Devlin.*

And like *Brown* and *Berry,* it appears that the juvenile's fingerprints were taken for the purpose of obtaining evidence linking the juvenile to a new crime, not to determine whether he had violated the

conditions of his probation.[5] If prior to fingerprinting there was probable cause to arrest the juvenile for burglary, then a showing of probable cause was required, just as in *Brown* and *Berry* a warrant was required because probable cause existed before the warrantless search was conducted.

We cannot avoid the conclusion that the order authorizing the fingerprinting circumvented the requirement of establishing probable cause linking the juvenile to the crime under investigation. Thus, we hold that the juvenile was not arrested based upon a reasonable belief that the juvenile violated the conditions of his probation. 42 Pa.C.S. §§6304(5), 6324(5).

*Arrest pursuant to the laws of arrest*

The next issue is whether the juvenile was taken into custody pursuant to the laws of arrest. 42 Pa.C.S. §6324(2). There was no arrest warrant in this case. But since a felony was involved, the juvenile could have been arrested without a warrant if the arresting officer had probable cause to believe that a felony had been committed and that this juvenile committed it.

The commonwealth has the burden of proving probable cause to arrest. *Commonwealth v. Verdekal,* 351 Pa. Super. 412, 420, 506 A.2d 415, 419 (1986). In this case, the commonwealth has made no showing that probable cause to arrest this juvenile existed at the time he was taken into custody and fingerprinted. Thus, we hold that the juvenile was not taken into custody pursuant to the laws of arrest.

*Arrest pursuant to an order of court*
*Requirement of probable cause*

---

5. The language of the commonwealth's application to fingerprint supports this conclusion.

Finally, this juvenile's arrest could be lawful because it was made pursuant to an order of this court. 42 Pa.C.S. §6324(1).

In accordance with 42 Pa.C.S. §6308(c)(1), this court entered an order authorizing the fingerprinting of this juvenile. Section 6308(c)(1) provides as follows:

"Law enforcement officers shall have the authority to take or cause to be taken the fingerprints or photographs, or both, of any child 15 years of age or older who is alleged to have committed a delinquent act that, but for the application of this chapter, would constitute a felony or a violation of subchapter (a) of Chapter 61 of Title 18 (relating to Uniform Firearms Act)."

The commonwealth's application for permission to fingerprint tracked the language of section 6308(c)(1). The application does not state any facts to support the allegation of delinquency, nor does it identify the person making the allegation, nor does it identify the felonious act allegedly committed. Thus, the commonwealth's application was submitted, and this court's order was issued, without any showing of probable cause to believe that the juvenile committed the delinquent act.

This brings us to the issue of whether the court can order the fingerprinting of a juvenile without a showing of probable cause by the commonwealth.

Since, in the absence of consent, a juvenile cannot be fingerprinted unless he is arrested and thereby taken into custody,[6] the question of whether the court can order fingerprinting without a showing of probable cause coincides with the question of whether the juvenile can be arrested without a showing of probable cause.

---

6. Cf. footnote 7, infra.

The commonwealth, citing *Commonwealth v. DeWitt,* 226 Pa. Super. 372, 314 A.2d 27 (1973), argues that one's fingerprints are not protected by the Fourth Amendment because they are a physical characteristic which is constantly exposed to the public. *DeWitt* held that passing an ultraviolet light over a person's hands did not constitute a search. *DeWitt,* 226 Pa. Super. at 380, 314 A.2d at 31.

The commonwealth's argument misses the point. "[T]he obtaining of physical evidence from a person involves a potential Fourth Amendment violation at two different levels — the 'seizure' of the 'person' necessary to bring him into contact with government agents, and the subsequent search for and seizure of the evidence." *United States v. Dionisio,* 410 U.S. 1, 8, 93 S.Ct. 764, 769, 35 L.Ed.2d 67, 76 (1973) (citation omitted). *DeWitt* is concerned with the second level of analysis. In the instant case we are concerned with the first level of analysis, to wit, whether the initial seizure of the juvenile complied with constitutional guarantees.

It is clear that an arrest is a seizure of the person within the meaning of the Fourth Amendment, *Commonwealth v. Lovette,* 498 Pa. 665, 672, 450 A.2d 975, 978 (1982) cert. denied, 459 U.S. 1178 (1983), and "[i]n this jurisdiction . . . one may not be arrested without probable cause." *Id.,* 498 Pa. at 671, 450 A.2d at 978.

The right to be free from unreasonable search and seizure applies to juveniles, as does the exclusionary rule when a juvenile's Fourth Amendment rights are violated. *In re Harvey,* 222 Pa. Super. 222, 295 A.2d 93 (1972). See also, *In the Interest of Stoutzenberger,* 235 Pa. Super. 500, 344 A.2d 668 (1975). Cf. *Levell v. California,* 449 U.S. 1043, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980) (Marshall, J., dissenting from denial of certiorari).

The juvenile was seized and taken to be fingerprinted pursuant to this court's order. The order issued upon the commonwealth's statement that the juvenile "is alleged to have committed a delinquent act." This statement, devoid of factual support, fails to establish probable cause, or even a reasonable suspicion,[7] that the juvenile committed a delinquent act. Thus, the court order was defective because it authorized an unconstitutional seizure of the juvenile.

Nor can we validate the seizure by finding that the juvenile was in "lawful custody" at the time of the fingerprinting. In *United States v. Sechrist*, 640 F.2d 81, 85 (7th Cir. 1981) the court of appeals held that when a juvenile was incarcerated, and thus in lawful custody, he could be fingerprinted without a showing of probable cause. In the instant case, the juvenile would have been free to go at the conclusion of the dispositional hearing but for the court order authorizing his seizure and fingerprinting. Since the juvenile was not incarcerated at the conclusion of the dispositional hearing, he was not in lawful custody at that time and his seizure and fingerprinting cannot be upheld on that basis.

---

7. See *Hayes v. Florida*, ____ U.S. ____, 105 S.Ct. 1643, 1647, ____ L.Ed.2d ____, ____ (1985), wherein the court states that "[n]one of the foregoing [cases] implies that a brief detention in the field for the purpose of fingerprinting, where there is only reasonable suspicion not amounting to probable cause, is necessarily impermissible under the Fourth Amendment." *Accord Commonwealth v. Fredericks*, 235 Pa. Super. 78, 92, 340 A.2d 498, 505 (1975). But cf. *Lovette*, 498 Pa. at 675, 450 A.2d at 980: "Because the seizure was inspired to serve investigative purposes rather than to arrest and charge the suspect does not, by that fact alone, justify application of the *Terry* [*v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] exception."

*Court's jurisdiction to enter order*

The very recent case of *In re Handwriting Exemplar of Neil Casale,* 338 Pa. Super. 111, 487 A.2d 877 (1985) also raises serious questions as to this court's jurisdictional authority to issue the order to fingerprint. Section 6324(1) authorizes the taking of a juvenile into custody "[p]ursuant to an order of court under this chapter." Our court order issued pursuant to section 6308(c)(1). The commonwealth's application to fingerprint was made, and our authorizing order was issued, before an allegation of delinquency was filed charging the juvenile with the crimes to which the fingerprinting application was related.

In *In re Handwriting Exemplar of Neil Casale, supra,* the common pleas court granted the district attorney's motion to compel defendant to submit to a handwriting exemplar examination. However, at the time the order was issued, no formal proceedings had been commenced against defendant in any manner authorized by our rules of criminal procedure. See Pa.R.Crim.P. 101.

A unanimous Superior Court held that the common pleas court lacked jurisdiction to enter an order against defendant prior to the formal institution of criminal proceedings. The court held that "both the federal and Pennsylvania cases require either the institution of regular criminal proceedings before an order for a handwriting exemplar may issue or the authority and control of an investigating grand jury if a district attorney undertakes to obtain such evidence by legal compulsion before filing a complaint." *In re Handwriting Exemplar of Neil Casale, supra.*

The court also distinguished an order for a search warrant from an order compelling a handwriting ex-

emplar examination. An order for a search warrant only authorizes law enforcement officers to search for and seize specific personal property. See Pa.R.Crim.P. 2002. On the other hand, the district attorney's motion to compel the defendant to submit to a handwriting exemplar examination "was an attempt to force [defendant] to create evidence of a crime without providing [him] with the minimal notice of the nature and cause of the accusations against him required both by Article I, Section 9 of the Constitution of Pennsylvania and by the Sixth Amendment to the United States Constitution." *In re Handwriting Exemplar of Neil Casale, supra.*

We recognize that in the instant case a formal allegation of delinquency had previously been filed against the juvenile. However, that allegation referred to crimes wholly unrelated to the burglary to which the fingerprinting order was related. At the time this court granted the commonwealth's application to fingerprint, the juvenile was not afforded the constitutionally mandated notice of the nature and cause of the accusation against him.

Therefore, in accordance with *In re Handwriting Exemplar of Neil Casale,* we hold that the Sixth Amendment and Article I, section 9 of the Pennsylvania Constitution mandate that a formal petition of delinquency be filed before this court has jurisdiction to enter an order authorizing the commonwealth to fingerprint a juvenile.

## APPLICATION OF EXCLUSIONARY RULE

The final question, then, is whether the exclusionary rule can be avoided because the arrest and fingerprinting were authorized by a court order subsequently found defective.

It should be noted that this court has previously granted requests for fingerprinting of juveniles made in the same manner as the instant application. Thus, the commonwealth could not be expected to anticipate that this juvenile's objection would precipitate a ruling that the commonwealth must show probable cause to obtain an order authorizing fingerprinting. Thus, the commonwealth as acted in good faith in procuring a court order and arresting and fingerprinting the juvenile' in reliance thereon.

The U.S. Supreme Court has recently held that the exclusionary rule need not apply when police officers conduct a search in good-faith reliance upon a facially valid warrant which is subsequently found defective. *United States v. Leon,* ____ *U.S.* ____, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Cf. *Illinois v. Krull,* ____ U.S. ____, ____ S.Ct. ____, ____ L.Ed.2d ____, 40 Cr.L.Rptr. 4081 (Docket No. 85-608), considering whether *Leon* and the exclusionary rule apply when police conduct a search pursuant to a state statute, subsequently declared unconstitutional, which authorizes warrantless searches.

The instant case would be at least as appropriate for the adoption of a good-faith exception because the officers were acting not only in good faith, but they were also acting pursuant to an order of court rather than a warrant approved by a magistrate. *Cf. Gluck v. United States,* 771 F.2d 750, 758 n.7 (3d Cir. 1985): "Since the IRS agents [ ] acted in good-faith reliance on a judicial order, this case falls squarely within the reasoning of *Leon.*"

However, the appellate courts of the commonwealth have yet to adopt the good-faith exception enunciated in *Leon,* and it is not our province to depart from precedent. That precedent establishes that an arrest, to be lawful, must be based upon

próbable cause. If probable cause is lacking, then the police officer's reasonable and good-faith reliance upon a defective warrant does not prevent the application of the exclusionary rule. *Commonwealth v. O'Shea*, 328 Pa. Super. 104, 116-17, 476 A.2d 911, 918 (1984).

Our research has uncovered no authority to support a conclusion that an arrest without probable cause is lawful simply because the arrest was authorized by an order of court.

*Commonwealth v. Bailey*, 460 Pa. 498, 333 A.2d 883 (1975), involved a similar situation. Therein a jury acquitted defendant of unrelated charges and he would have been free to leave the courtroom. However, immediately after the verdict was read, police officers seized defendant on the authority of a judicial "bring up" order. Pursuant to this order the defendant was taken to the police station. After receiving *Miranda* warnings, defendant made several inculpatory statements. The court held that the statements must be suppressed because the judicial order authorizing defendant's seizure was not based upon probable cause. See also *Commonwealth v. Millings*, 317 Pa. Super. 235, 463 A.2d 1172 (1983): arrest made pursuant to a void warrant and arresting officer had no probable cause to arrest, held, arrest illegal despite officer's good-faith belief in validity of warrant.

If the focus is on the individual's right to be free from unconstitutional arrest, then the determinative factor should be the existence vel non of probable cause, and not the source of the authority under which the arrest is made. Thus, we hold that this court's order authorizing the seizure and fingerprinting of this juvenile without a showing of probable cause and prior to the institution of formal proceedings against him contravenes the juvenile's

rights under the Fourth and Sixth Amendments and under Article I, sections 8 and 9 of the Pennsylvania Constitution.

Having found that the juvenile was taken into custody neither pursuant to the laws of arrest nor under the belief that he had violated the conditions of his probation, and having found that our court order authorizing the fingerprinting is constitutionally infirm, we must conclude that the juvenile's fingerprints were unlawfully obtained. Consequently, this evidence must be suppressed. *Hayes v. Florida, supra; Davis v. Mississippi,* 494 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).

## CONCLUSION

In this case we have concluded that the United States and Pennsylvania constitutions mandate that before a juvenile may be taken into custody for the purpose of fingerprinting, (1) a formal petition of delinquencey must be filed, and (2) the Commonwealth must establish that there is probable cause to believe that the juvenile committed a particular act that, but for the application of the Juvenile Act, would constitute a felony or a violation of the Uniform Firearms Act.

We recognize that the general assembly does not intend to violate the Constitution of the United States or of this commonwealth. 1 Pa.C.S. §1922(3); *Commonwealth v. Lutz,* 512 Pa. 192, 516 A.2d 339 (1986). Furthermore, when a statute is reasonable susceptible of two constructions, by one of which the statute would be unconstitutional and by the other it would be valid, we must adopt the construction which upholds the constitutionality of the statute. *In re William L.,* 477 Pa. 322, 329, 383 A.2d 1228, 1231, cert. denied 439 U.S. 880 (1978); *Ramsey v. Zoning Hearing Board of the Borough of*

*Dormont,* 77 Pa. Commw. 456, 459, 466 A.2d 267, 269 (1983).

42 Pa.C.S. §6308(c)(1) authorizes the taking of the fingerprints of a child "who is alleged to have committed a delinquent act." We have concluded that when a court order authorizing the commonwealth to take a juvenile into custody for fingerprinting is based upon a bald, unsupported allegation that the juvenile committed an unspecified act, the seizure of the juvenile pursuant to that order violates the juvenile's rights under the Fourth Amendment and Article I, section 8 of the Pennsylvania Constitution. We can avoid this constitutional infirmity by construing this statute to require the commonwealth to establish probable cause to believe that the juvenile committed a felonious act.

We have also concluded that the court has jurisdiction to enter an order under 42 Pa.C.S. §6308(c)(1) only after a formal petition of delinquency has been filed.

Therefore, in all future cases before this court, we shall entertain an application to fingerprint only if a formal petition of delinquency is filed. The fingerprints for which the application is made must relate to the investigation of the delinquent act alleged in the petition of delinquency. Furthermore, we shall construe 42 Pa.C.S. §6308(c)(1) as follows:

"Law enforcement officers shall have the authority to take or cause to be taken the fingerprints or photographs, or both, of any child 15 years of age or older when the commonwealth has demonstrated to the court that there is probable cause to believe that the child has committed a delinquent act that, but for the application of this chapter, would constitute a felony or a violation of subchapter (a) of Chapter 61 of Title 18 (relating to Uniform Firearms Act)."

## ORDER

And now, this December 19, 1986, in accordance with the foregoing opinion, it is hereby ordered and adjudged that the above-named juvenile's application for suppression of evidence is granted.