Curtis **JARVIS EL**

v.

**Parole Supervisor, Christopher PANDOLFO.**

**Civ. A. No. 86–6619.**

United States District Court, E.D. Pennsylvania.

Oct. 25, 1988.

Curtis Jarvis El, Graterford, Pa., pro se.

Mary E. Butler, Deputy Atty. Gen., Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

VANARTSDALEN, Senior District Judge.

Plaintiff, Curtis Jarvis El, has filed this action pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights were violated by the Commonwealth of Pennsylvania, the Pennsylvania Board of Probation and Parole (PBPP) and Christopher Pandolfo, parole supervisor. Two of the defendants, the Commonwealth of Pennsylvania and the Pennsylvania Board of Probation and Parole, were dismissed from the case by order dated September 1, 1987.

Plaintiff alleges that defendant denied him access to his home and thereby violated his eighth amendment rights as incorporated by the fourteenth amendment. *See* Complaint ¶ 1. He also alleges violations of his fourth amendment rights as incorporated by the fourteenth amendment stemming from the search of his home, the seizure of a handgun found in his home, and the use of that handgun as a basis for parole revocation. *See* Complaint ¶¶ 2, 3. Finally, plaintiff's complaint could also be read to allege that his due process rights under the fourteenth amendment were violated by the denial of his request for parole, the search of his home, and the subsequent revocation of his parole.

Defendant, Christopher Pandolfo, moves for summary judgment. For the reasons stated below, summary judgment will be granted in favor of defendant Christopher Pandolfo and against plaintiff.

■ Plaintiff was confined to the State Correctional Institution at Muncy. On May 14, 1986, the PBPP received a parole application from plaintiff, dated May 7, 1986. Plaintiff's application was denied because the address listed for the home phase plan was 4020 Poplar Street, Philadelphia, Pennsylvania. This is the home in which plaintiff was to reside if granted parole. PBPP employee, Martha Holman, called this home and subsequently spoke with its occupant, Mrs. Holmes. Mrs. Holmes stated that she was living on the premises with her four children, and that she was renting the home from plaintiff. She also stated that she would not permit plaintiff to live in the house while she was in possession. Holman later visited the Poplar Street location with another PBPP agent, William Murphy, and confirmed that Mrs. Holmes was actually living there with her four children.

Due to the circumstances stated above, the defendant Pandolfo, as supervisor of the PBPP Haddington suboffice, decided not to accept plaintiff's home phase plan because defendant believed that allowing

plaintiff to live in this residence would cause conflicts that would jeopardize plaintiff's parole status and Mrs. Holmes tenancy rights. *See* Defendant's Brief at 4. I conclude that the defendant's denial of plaintiff's home phase plan did not violate any of plaintiff's constitutional rights.

Plaintiff can only prevail on his section 1983 action if he can successfully show that he has been deprived of "rights, privileges, or immunities secured by the Constitution or laws of the United States." 42 U.S.C. § 1983. It seems that plaintiff's allegation of constitutional violation could best be classified as arguing that his due process liberty rights were violated by the denial of his parole. However, such a denial does not violate plaintiff's constitutional rights.

There is no constitutional right to parole; rather, it is a matter of mercy and grace. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). As a prisoner, plaintiff enjoys no constitutional or inherent right to be conditionally released before the expiration of a valid sentence. *Barlip v. Commonwealth Probation and Parole Bd.*, 45 Pa.Commw. 458, 462, 405 A.2d 1338, 1340 (1979). "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty...." *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1977). "A liberty interest arises only after such a parole is granted under a state system of parole and subject to conditions imposed, and such a liberty interest does not enjoy the full panoply of constitutional rights otherwise enjoyed by those who had not run afoul of the law." *Barlip*, 45 Pa.Commw. at 462, 405 A.2d at 1340 (1979); *see Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Thus, the defendant did not violate any liberty interest by refusing to grant plaintiff's parole request. *See Barlip*, 45 Pa.Commw. 458, 405 A.2d 1338 (1979); 61 Pa.Stat.Ann. § 331.23 (1964). Since plaintiff has no constitutional or state law liberty interest in obtaining parole, no constitutional rights were violated by the denial of parole.

I will next address plaintiff's contention that his fourth amendment rights were violated when probation officers searched his home on August 22, 1986, after plaintiff had been paroled. For the reasons stated below, I find that the warrantless search of the parolee's home here did not violate the fourth amendment rights of plaintiff as a parolee.[1] Thus, plaintiff's § 1983 claim based on this search must fail.

The Supreme Court in *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed. 2d 709 (1987), recently dealt with this issue. In *Griffin* Justice Scalia dealt with the search of a probationer Griffin's home by a probation officer. The probation officer did not possess a warrant. Griffin was on probation when Michael Lew, the supervisor of Griffin's probation officer, received information from a detective on the Beloit Police Department that there "were or might be guns in Griffin's apartment." Unable to secure the assistance of Griffin's own probation officer, Lew, accompanied by another probation officer and three plainclothes policemen, went to Griffin's apartment. The search of Griffin's home revealed a handgun. Griffin was subsequently convicted for the firearm violation. The gun seized in the search was not suppressed as evidence.

The Court concluded that a search warrant was not necessary to search a probationer's home in *Griffin*. The Court stated that the fourth amendment requires that searches be "reasonable." Although a search can usually be undertaken only with a warrant, exceptions have been permitted when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Griffin*, 107 S.Ct. at 3167; *see also New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (school officials may conduct warrantless searches of some student property without probable cause); *O'Connor v. Ortega*, 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 : (1987) (government employers and supervisors

---

**1.** The fourth amendment is made applicable to the states by the fourteenth amendment.

may conduct warrantless, work-related searches of employees' desks and offices without probable cause); *New York v. Burger*, 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987) (warrantless inspections of commercial property); *Camera v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (searches pursuant to a regulatory scheme need not adhere to the usual warrant or probable cause requirement as long as the searches meet reasonable legislative or administrative standards).

The Court in *Griffin* went on to state that the "special needs" of the probation system justified a departure from the usual warrant and probable cause requirement. First, the Court noted that probationers and parolees do not enjoy the same fourth amendment rights possessed by other citizens. "To a greater or lesser degree, it is always true of probationers (as we have said is true of parolees) that they do not enjoy 'the absolute liberty to which every citizen is entitled, but only ... conditional liberty properly dependent on observance of special [probation] restrictions.'" *Griffin*, 107 S.Ct. 3164, 3168, *quoting Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The Court noted that probation restrictions are meant to assure that probation serves as a period of rehabilitation and that the community is not harmed by the probationer being at large. Supervision is to ensure that imposed restrictions are actually being observed. Supervision has grown in importance as probation has become a common sentence for those convicted of serious crimes; thus, there are "special needs" that permit the probation officer to impinge upon the probationer's privacy.

The Court then went on to conclude that the "special needs" of the probation system justified the Wisconsin search regulation which allows a probation officer to search the probationer's home if "reasonable grounds" for the search exist. The Court stated that a warrant requirement would interfere with the probation system, delay response to misconduct, reduce the deterrent effect that the possibility of expeditious searches would otherwise create, and

interfere with the probationary relationship. "[A] probable cause requirement would reduce the deterrent effect of the supervisory arrangement, the probationer would be assured that so long as his illegal (and perhaps socially dangerous) activities were sufficiently concealed as to give rise to no more than reasonable suspicion, they would go undetected and uncorrected." *Griffin*, 107 S.Ct. at 3170.

The search in the case before this court involves a parolee, while *Griffin* involved a probationer. However, I feel that the principles set forth in *Griffin* apply with equal or greater force here. Parolees, like probationers, need to be supervised. The same "special needs" that led the Supreme Court to dispense with the warrant requirement in *Griffin* apply here; that is, the warrant requirement would interfere with the parole system, delay response to misconduct, reduce the deterrent effect that the possibility of expeditious searches would otherwise have, and interfere with the parole system. Indeed, it seems that the objectives of community safety and rehabilitation give rise to more compelling "special needs" in respect to parolees than they do with probationers. *See Diaz v. Ward*, No. 75 Civ. 1194 (S.D.N.Y. November 27, 1987) (Haight, J.) [available on WESTLAW, 1987 WL 26841]. A probationer, by definition, is a convicted person whom the trial judge concluded did not require incarceration. A parolee, is a person whom the trial judge felt needed incarceration but is subsequently paroled. Thus, the "special needs" here are even more clear given that the trial judge concluded that the person required incarceration. These special needs in the parole context were recognized and evaluated in a thoughtful opinion by the Ninth Circuit more than a decade ago. *See Latta v. Fitzharris*, 521 F.2d 246 (9th Cir.1975) (en banc). For similar reasons the Pennsylvania courts have likewise long concluded that a search warrant was not required when a parole officer searches a parolee's home. *Commonwealth v. Brown*, 240 Pa. Super. 190, 361 A.2d 846 (1976).

Pennsylvania courts have stated that a parole agent is not required to ob-

tain a search warrant in order to make a routine supervisory search of the parolee's residence. *Id.* "One who has been placed on probation in being sentenced after conviction of a crime is as much under the supervision of the state as one who is sentenced to incarceration. A probation officer is entitled to search the belongings of such an individual to ensure that they do not reveal a violation of the terms of probation." *Commonwealth v. Devlin,* 294 Pa. Super. 470, 478, 440 A.2d 562, 566 (1982); *see also Commonwealth v. Brown,* 361 A.2d at 850 (when performing his normal duties, a parole officer is not required to obtain a search warrant); *see also Griffin,* 107 S.Ct. at 3168 (probation is simply one point on a continuum of possible punishments). The fourth amendment rights of persons on probation or parole must give way to the necessity for ensuring that incarceration for some period is not necessary for the protection of society. Pennsylvania has thus adopted the basic test that for a search to be reasonable, it must be based upon the probation or parole officer's reasonable belief that the search is necessary to the performance of his duties. *Id.; cf. United States v. Duff,* 831 F.2d 176, 179 (9th Cir.1987); *Latta v. Fitzharris,* 521 F.2d 246, 250–52 (9th Cir.1975) (en banc).

▇ The search at issue here took place on August 22, 1986. Plaintiff had been paroled on June 25, 1986. On July 11, 1988, plaintiff was directed to report to the PBPP Haddington sub-office on July 18, 1986. Plaintiff did not report until August 22, 1986. This failure to report is a violation of 37 Pa.Code § 63.4(1) (1988). Such a failure provides a basis for arrest. *See Commonwealth v. Miller,* 303 Pa.Super. 504, 450 A.2d 40 (1982). When questioned by a parole officer, plaintiff admitted moving from his authorized 6200 Haverford Avenue address to the unapproved 4020 Poplar Street address without obtaining prior written permission from PBPP. This

unauthorized move [2] is a violation of 37 Pa.Code § 63.4(2), and also provides a basis for arrest. *Id.* 450 A.2d at 42. Upon obtaining information directly from plaintiff that plaintiff had violated at least two conditions of his parole,[3] plaintiff's house at 4020 Poplar Street was searched. The search uncovered a small caliber handgun under plaintiff's clothing in the closet. It seems clear that the search satisfies the fourth amendment in this context. As the Supreme Court has made clear, the fourth amendment rights of a parolee are strictly limited. *See Griffin,* 107 S.Ct. 3164 (1987). The special needs of the parole system, especially the need to protect society, permits plaintiff's home to be searched without a warrant. The parole officer's search need not be based on probable cause. Since the parole officer's search was conducted in the performance of his normal duties and his conduct was reasonably related to those duties, the search satisfies the fourth amendment.

I next will consider plaintiff's allegations that his fourteenth amendment due process rights were violated. Plaintiff's allegations can be read to set forth two claims: first, that the search of his home violated the fourteenth amendment; second, that his arrest on August 22, 1986 violated his fourteenth amendment rights. Since these two claims are not valid under the fourteenth amendment, plaintiff's section 1983 claim based on them must fail.

The search of plaintiff's home without a warrant did not violate any state law liberty or property right. *See Commonwealth v. Brown,* 240 Pa.Super. 190, 361 A.2d 846 (1976) (when performing normal duties, a parole agent is not required to obtain a search warrant). Thus, there is no fourteenth amendment due process violation based on this search.

▇ The arrest on August 22, 1986 of plaintiff after his parole violations did not

---

**2.** The move apparently occurred on or about June 25, 1986. *See* Defendant's Motion for Summary Judgment at 5.

**3.** Plaintiff was also found to have used narcotics on August 22, 1986, a violation of 37 Pa.Code § 63.4(5). *See* Defendant's Motion for Summary Judgment, Exhibit D–5(b). It is not clear whether this determination was made before or after plaintiff's home was searched. In either case, the result here would not be changed by when this determination was made.

violate any state law liberty right. *See Commonwealth v. Miller*, 303 Pa.Super. 504, 450 A.2d 40 (1982) (parolee rearrested after his parole violations); *Falasco v. Commonwealth Probation and Parole Bd.*, 104 Pa.Commw. 321, 521 A.2d 991 (1987) (parolee was returned to prison after parole violations); *see also Barlip v. Commonwealth Probation and Parole Bd.*, 45 Pa.Commw. 458, 405 A.2d 1338 (1979) (state may impose specific and general conditions on parole release). Thus, there is no fourteenth amendment due process violation based on this parole revocation.[4]

4. Defendant Pandolfo also asserts a qualified immunity defense. However, given the determinations above, I need not consider this issue.