THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL L. KRAMER, Defendant-Appellant.
Second District   No. 2—89—0629

Opinion filed October 25, 1990.—Rehearing denied December 4, 1990.

John R. Corneille, of Cliffe, Foster & Corneille, of De Kalb, for appellant.

Michael P. Coghlan, State's Attorney, of Sycamore, and Eleesha Pastor O'Neill, of Chicago (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GEIGER delivered the opinion of the court:

Following a bench trial, the defendant, Michael Kramer, was convicted of knowingly and unlawfully producing more than 20 but not more than 50 *Cannabis sativa* plants (Ill. Rev. Stat. 1987, ch. 56½, par. 708(c)). On appeal the defendant raises two issues: whether the trial court should have suppressed the evidence as the fruit of an illegal search; and whether he was proved guilty of the offense beyond a reasonable doubt. We reverse and remand.

On October 18, 1988, the defendant was approximately three months behind in his rental payments. His landlord, Joseph Vilona, entered the defendant's apartment to make an inventory of the defendant's personal property for seizure in connection with a distraint, or distress for rent action. (Ill. Rev. Stat. 1989, ch. 110, par. 9—301 *et seq.*) While in the apartment, Vilona discovered plants which he believed were *Cannabis sativa*. He relied upon his 10 years as a military policeman to identify the plants.

Mr. Vilona called the De Kalb police and Officer Probasco responded. Vilona met Probasco outside the building and excitedly told Probasco that he had found something in an apartment. He did not specify what he had found. The men entered the apartment, and Vilona showed Probasco the plants. Probasco seized plants which later tested positive for cannabis.

The defendant filed a motion to suppress the plants on the grounds that there had been no exigent circumstances and that he had not consented to the warrantless search. The court, in denying the motion, explained that because the defendant was in default as a tenant, the landlord was lawfully in the apartment to exercise his right to distraint. The court reasoned that based upon his right to enter and possess the apartment for that purpose, the landlord had a right to apprise the authorities of contraband. Lastly, according to the court, where the landlord was exercising distraint, he could consent to a search.

Following a bench trial, the court found the defendant guilty and entered a conviction. The defendant brought this appeal. On appeal the defendant first contends that the evidence of the plants should

have been suppressed because the plants were seized illegally. He argues that the search and seizure were constitutionally prohibited because they were not authorized by warrant, not based on exigency, and not supported by valid consent. Particularly regarding consent, the defendant argues that the landlord's consent was constitutionally ineffective where the lease remained intact and the landlord had no "common authority" over the apartment. On the consent issue, the defendant relies primarily upon *People v. Sedrel* (1989), 184 Ill. App. 3d 1078.

In *Sedrel*, the defendant's lease provided for a five-day rent payment grace period. On the Monday following Thanksgiving the defendant's rent was three days overdue. On that day the landlord, who had been unable to reach her earlier, entered defendant's apartment to determine if she still resided there. Thereafter, he reported to police that he had seen suspected contraband in the apartment. The police entered the apartment without a search warrant, field tested and determined that the suspected substance contained cocaine, and only later obtained a warrant.

■■ The *Sedrel* court reversed the defendant's conviction, finding that the search and seizure were unreasonable. According to the court, the landlord lacked authority to consent to the search, and there were no other applicable exceptions to the warrant requirement. In reaching its conclusion, the *Sedrel* court specifically noted the short term of the defendant tenant's default and found that the lease had not expired or been terminated. (184 Ill. App. 3d at 1081.) It noted that, generally, during the pendency of a lease a landlord cannot validly consent to search of a leased premises. 184 Ill. App. 3d at 1079-80, citing *Chapman v. United States* (1961), 365 U.S. 610, 5 L. Ed. 2d 828, 81 S. Ct. 776.

The *Sedrel* court specifically found that the defendant's delayed payment was not sufficient to lead one to the conclusion of abandonment; it also rejected the State's argument that the lease provision allowing the landlord to enter the apartment at reasonable times to repair or inspect authorized the consent. The court commented that the case might have been closer if the police could have obtained a search warrant prior to entering the apartment—something they could not do because of the landlord's unfamiliarity with the appearance of the suspected contraband. 184 Ill. App. 3d at 1081.

The State argues that *Sedrel* is distinguishable. It first emphasizes that, in the present case, the State did not rely on the landlord's right to enter under the defendant's lease to justify the search. It notes that the rent here was months overdue and that the landlord

was executing a distraint warrant. The State also emphasizes that unlike in *Sedrel,* where the landlord could not have supplied sufficiently certain information to support a search warrant, here the landlord was able to identify positively the contraband and could have provided information to support a warrant had he fully informed the police prior to their entry.

The State argues that this case is more nearly analogous to *United States v. Botsch* (2d Cir. 1966), 364 F.2d 542. There, the court upheld a warrantless search of a storage shanty on the basis of the landlord's consent. In *Botsch* the consenting landlord had arranged with the defendant to sign for deliveries to the shanty. With the defendant's express authorization, he paid freight charges for the defendant and used a key to open the shanty for the defendant's deliveries. Those deliveries flowed from a suspected fraudulent delivery scheme which was the focus of the search. 364 F.2d at 547.

■ As the *Botsch* court emphasized, the landlord there had been made a passive, innocent accomplice in illegal activities. He had an active and direct, although innocent, involvement; consequently, he had a vital interest in cooperating with authorities promptly and voluntarily to exculpate himself. (364 F.2d at 548.) In this case, on the contrary, landlord Vilona had no intertwining with the defendant's apparently illegal activities. There is no evidence that his connection with the defendant extended beyond leasing the apartment. We find that the landlord here had no need to enable a search in order to relieve himself of suspicion. (*Cf.* 364 F.2d at 548.) Consequently, we find that the State's suggested analogy to *Botsch* is unpersuasive.

We also are unpersuaded by the State's reliance upon *United States v. Diggs* (3d Cir. 1976), 544 F.2d 116. There, the defendant had given his father-in-law a locked box for safekeeping; the father-in-law subsequently learned that the defendant had been arrested for armed robbery. The *Diggs* court held that the custodian father-in-law had risked being unwittingly involved in an offense and that he had a vital personal interest in the box which constituted a sufficient relationship to entitle him to give permission to search its contents. 544 F.2d at 119, 122.

*Diggs,* like *Botsch,* is distinct from this case. In this case, there was no indication that the landlord was exposed to some risk of implication in an offense unless he consented to the apartment's search. We do not find that the landlord's mere discovery of the cannabis plants established a sufficiently significant interest to entitle him to consent to a search.

■ Furthermore, we do not find that the landlord's authority to

distrain supported warrantless police involvement. The State correctly observes that under the provisions of distraint or distress for rent under the Forcible Entry and Detainer Act (the Act) (Ill. Rev. Stat. 1989, ch. 110, par. 9—301 *et seq.*), landlord Vilona had the authority to enter the defendant's apartment to seize his tenant's personal property for unpaid rent. Also according to the State, the landlord effectively became a bailee holding the defendant's personal property pending a court's awarding title to him. Nevertheless, assuming for the sake of argument that both those observations are accurate, the State fails to justify the particular police involvement here.

We note that it has been held that active police involvement in distraint seizure, a process intended for private citizen action, violates the Act. (See *Greco v. Guss* (7th Cir. 1985), 775 F.2d 161, 166 (interpreting the Act); *USA I Lehndorff Vermoegensverwaltung v. Cousins Club, Inc.* (1976), 64 Ill. 2d 11.) Furthermore, although this is not a case where the police attempted to evade the warrant requirement, we are aware of no basis upon which to determine that the landlord's personal authority for a distraint action against the defendant afforded him authority to consent to police involvement on the defendant's premises. As in *Sedrel*, no other exception to the warrant requirement applies.

We find that *Sedrel*, with its recognition of limitations on a landlord's authority to consent to the search of a tenant's apartment, controls. The record shows that despite the defendant's default, his lease was in force at the time of the search. (See *Soltwisch v. Blum* (1973), 9 Ill. App. 3d 760, 763.) Furthermore, the record does not show that the landlord had some special relationship to the apartment to support his authority to consent.

The State argues that even if the landlord did not have the authority to consent to the search, the seizure still may be upheld under *United States v. Jacobsen* (1984), 466 U.S. 109, 80 L. Ed. 2d 85, 104 S. Ct. 1652. In *Jacobsen*, employees of a freight company found bags of cocaine in a damaged package. The employees then notified the Drug Enforcement Administration, whose agents reopened the package and seized the cocaine. The Court held that the seizure did not violate the fourth amendment because the privacy interests of the defendant had already been frustrated by a private citizen. (*Jacobsen*, 466 U.S. at 126, 80 L. Ed. 2d at 102, 104 S. Ct. at 1663.) Although the State claims that *Jacobsen* is directly analogous, its reliance is misplaced. As this court clearly explained in *People v. Vought* (1988), 174 Ill. App. 3d 563, 568, the *Jacobsen* holding did not apply to searches of premises. Thus, the search cannot be justified under the *Jacobsen* rationale.

■ Finally, the State argues that the seizure may be justified on the theory of apparent authority. The Supreme Court has recently accepted the theory of apparent authority to consent to a search of premises. In *Illinois v. Rodriguez*, the Court explained that a search is not unreasonable and does not constitute a violation of the fourth amendment if the police reasonably, even if incorrectly, believe that the person who gives consent has authority to do so. *Illinois v. Rodriguez* (1990), 497 U.S. ____, ____, 111 L. Ed. 2d 148, 159-61, 110 S. Ct. 2793, 2799-802.

■ In issuing its decision, the *Rodriguez* court cautioned that police officers may not always accept an invitation to enter premises. Even if the consenter claims to live on the premises, the officers must make further inquiry if the surrounding circumstances would raise a doubt of that claim. (*Rodriguez*, 497 U.S. at ____, 111 L. Ed. 2d at 161, 110 S. Ct. at 2801.) A warrantless entry based upon consent is unlawful unless the facts available to the officer would have warranted a man of reasonable caution to believe that the consenting party had authority to consent or unless that party had actual authority to consent. See *Rodriguez*, 497 U.S. at ____, 111 L. Ed. 2d at 161, 110 S. Ct. at 2801.

■ We note that common authority justifying a third-party consent to search is not to be implied from a property interest, such as that of a landlord; rather, it rests on mutual use of the property by persons generally having joint access or control. (See *United States v. Matlock* (1974), 415 U.S. 164, 171 n.7, 39 L. Ed. 2d 242, 250 n.7, 94 S. Ct. 988, 993 n.7.) Consequently, we conclude that the apparent authority doctrine which *Rodriguez* discusses in terms of a consenting alleged coinhabitant does not support the police entry here.

The consenter here, because he was merely a landlord, generally would be considered to lack authority to consent to the search. (See *Chapman v. United States* (1961), 365 U.S. 610, 5 L. Ed. 2d 828, 81 S. Ct. 776.) Furthermore, despite the State's argument that the defendant's apartment apparently was abandoned by the tenant, thus changing the landlord's relationship to it, the record is devoid of evidence that the landlord suggested the possibility of abandonment to Officer Probasco before they entered into the apartment. Thus, any evidence of abandonment does not bolster the landlord's apparent authority to consent. The evidence indicates no basis for a reasonable belief by Officer Probasco that the landlord had the kind of mutual use of the apartment to give him authority to consent to its search.

We find no valid consent, no exigency, and no other applicable exception to the warrant rule. Consequently, we find that the warrant-

less seizure of the plants was unlawful and that the trial court erred in failing to suppress.

Because this case presents the possibility of retrial without tainted evidence (compare *People v. Boehm* (1980), 89 Ill. App. 3d 176, 179), we must also consider the defendant's challenge to the sufficiency of the evidence at trial. See *People v. Taylor* (1979), 76 Ill. 2d 289, 309.

In his reasonable doubt argument, the defendant focuses upon the evidence for the requisite number of plants to support the offense. He argues, essentially, that the State's evidence, including his landlord's and Officer Probasco's testimony concerning the number of plants at issue, photographs of groups of plants seized, and lab evidence which found a certain weight of substance containing cannabis, did not add up to sufficient proof of the offense which was defined in terms of the number of cannabis plants produced. He argues that the State was obligated to prove that a minimum of 20 plants individually tested positive for cannabis.

In his argument, the defendant cites *People v. Ayala* (1981), 96 Ill. App. 3d 880, 882-83, *People v. Park* (1978), 72 Ill. 2d 203, 211, and *People v. Jackson* (1985), 134 Ill. App. 3d 785, 787. The *Park* and *Jackson* courts both stated that the positive identification of cannabis requires both microscopic and chemical analysis. In *Ayala*, the police lab weighed and tested two bags of substance possessed by the defendant. Both bags tested preliminarily positive for heroin, but only one of the bags was subjected to further, conclusive tests. The court held that the proof was insufficient that the preliminarily tested bag also contained heroin; it reduced the defendant's conviction to reflect the quantity of substance in the conclusively tested bag.

We are not persuaded by the defendant's argument. The issue here, the identification of individual, intact plants, is fundamentally different from the question of positively testing either bags of suspected powder as in *Ayala* or suspected dry plant material, as apparently was at issue in *Park* and *Jackson*. The identity of living plants is more readily apparent and less subject to question than the chemical content of a quantity of powder or dried plant material. We find, as the State argues, that this case is closer to cases which allow definitive, positive tests on a quantity of randomly selected tablets to support a conviction based on the larger quantity of tablets from which those were selected. See *People v. Kaludis* (1986), 146 Ill. App. 3d 888, 896.

██ Here, the court heard both the landlord and Officer Probasco testify to their experience that enabled them to recognize a cannabis

plant. Each testified that he had counted a quantity of cannabis plants within the 20 to 50 range defined by the offense. Additionally, the court heard the lab evidence which included a positive chemical analysis for cannabis in the seized plant material. We find that through the testimony of Officer Probasco and the landlord, the State's photographs, and the positive chemical tests on the plant material gathered from the defendant's apartment, the court was presented sufficient evidence to find proof beyond a reasonable doubt of the requisite number of cannabis plants.

The judgment of the circuit court of De Kalb County is reversed, and the cause is remanded for further proceedings consistent with our opinion.

Reversed and remanded.

UNVERZAGT, P.J., and DUNN, J., concur.