685 A.2d 1026

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**James HEISTAND, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 21, 1996.

Filed Nov. 25, 1996.

Mark E. Gottlieb, Philadelphia, for appellant.

Stephen B. Harris, Assistant District Attorney, Warrington, for the Commonwealth, appellee.

Before CIRILLO, President Judge Emeritus, and SAYLOR and HOFFMAN, JJ.

CIRILLO, President Judge Emeritus:

James Heistand appeals from a judgment of sentence entered in the Court of Common Pleas of Bucks County for violation of section 403(b) of the State Ethics Act. 65 P.S. § 403(b). We affirm.

James Heistand owned and operated a roofing and sheet metal company located in Bensalem, Pennsylvania. In June of 1993, through a sealed bidding process, Heistand was awarded a contract by the Bensalem School District ("Bensalem") to reroof the Struble Elementary School. Subsequent to the award, Heistand and Bensalem executed a standard written contract known in the industry as an A.I.A. (American Insti-

tute of Architects) contract. Pursuant to the contract, the the architect supervising the project was required to approve the progress of the work prior to disbursement of installment payments provided for under the contract. While working on the project, Heistand occasionally came in contact with Thomas Donahue, the then assistant Facilities Manager of Bensalem.[1] Donahue was charged with the supervision of essentially all of the contracting for construction and repair work for Bensalem. Although Heistand only knew Donahue casually, he offered to "loan" Donahue $ 7,295.00 for the initiation fee and membership dues to Spring Mill Country Club, of which he was also a member. There were, however, no terms such as interest rates or repayment schedules attached to the loan. Donahue accepted Heistand's offer. On July 29, 1993, an invoice was sent to Heistand from Spring Mill for Donahue's dues. Immediately thereafter, Donahue authorized disbursements in the amount of $159,750.00 under the contract, but without the approval of the project architect. On August 9, 1993, Heistand executed a second contract with Bensalem for another re-roofing project. On August 10, 1993, Heistand paid Donahue's country club dues.

A grand jury convened to investigate the activities of twelve individuals including Heistand and Donahue. Both Heistand and Donahue were subpoenaed to testify. Only after Donahue was subpoenaed did he repay Heistand, a full fourteen months after the loan was made. On February 15, 1996, Heistand was charged with bribery in official and political matters[2], commercial bribery[3] and conflict of interest.[4] A jury trial ensued after which Heistand was found guilty solely of conflict of interest. Heistand was sentenced to pay a fine of $5000.00. This appeal followed. Heistand raises one issue for our consideration:

1.  In August of 1993, after the facilities manager, John Hanson, retired, Donahue was promoted to facilities manager of Bensalem.
2.  18 Pa.C.S.A. § 4701(a)(1) (1983).
3.  18 Pa.C.S.A. § 4108(c) (1983).
4.  65 Pa.C.S.A. § 403(b)(1989).

Is the evidence sufficient to support a finding that appellant, a private citizen, possessed an "understanding" within the meaning of 65 P.S. § 403(b), that his gift or loan to a public employee would influence the judgment of the public employee?

■ In evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. *Commonwealth v. Jarman,* 529 Pa. 92, 94–95, 601 A.2d 1229, 1230 (1992); *Commonwealth v. Swann,* 431 Pa.Super. 125, 635 A.2d 1103 (1994). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Swerdlow,* 431 Pa.Super. 453, 458, 636 A.2d 1173, 1176 (1994)(citing *Commonwealth v. Hardcastle,* 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988)). *See also Commonwealth v. Chmiel,* 536 Pa. 244, 639 A.2d 9 (1994).

■ Heistand argues that the evidence was insufficient to prove that he had an "understanding," within the meaning of 65 P.S. § 403(b), that his payment of Donahue's dues would influence Donahue, because he received no favorable treatment as a result of the payment, did not conceal his payment to Spring Mill Country Club, and did not benefit in any way from this payment.

Section 403(b) of the State Ethics Act provides:

No person shall offer or give to a public official, public employee ... anything of monetary value, including a gift, loan, political contribution, reward or promise of future employment based on the offeror's or donor's understanding that the vote, official action, or judgment of the public official or public employee ... would be influenced thereby.

65 Pa.C.S.A. § 403(b) (1989) (emphasis added).

■ Section 403(b) requires that a donor or offeror have an understanding that a public official's judgment will be

influenced by the acceptance of something of value from the donor or offeror. 65 Pa.C.S.A. § 403(b) (1989); *Commonwealth v. Cherpes,* 360 Pa.Super. 246, 520 A.2d 439 (1987). Unlike a charge of bribery, it is not necessary for the prosecution to prove that a direct benefit flowed from the donor's or offeror's gift or loan. *See Cherpes, supra,* (explaining the distinction between conflict of interest and bribery; stating that the purpose of section 403(b) is to assure the public that the financial interests of public officials would not conflict with their duty to place the interests of the public before all other considerations; conflict of interest standard is a much higher duty than the simple duty to refrain from engaging in bribery.) [5]

The record indicates that Heistand, a contractor, paid country club membership and dues for Donahue, a mere casual acquaintance.[6] Donahue was a public official whose office was charged with contracting and executing building and repair work for the Bensalem school district. Curiously, at the time Heistand offered to pay Donahue's dues, his contracting company was under contract to complete a re-roofing job for a Bensalem school. In addition, immediately after Heistand

**5.** In his brief, Heistand seems to assert that because he is not a public official, the stringent purpose of the conflict of interest statute should not apply to him. In essence, he would have this court construe "understanding that the judgment of the public employee will be influenced thereby" to mean an understanding that he will receive a direct benefit. As this court has stated previously, the conflict of interest statute has a different purpose than the bribery statute. *Cherpes, supra.* The conflict of interest statute was enacted to avoid even the appearance of impropriety by public officials. *Id.* Moreover, the conflict of interest statute clearly states that "no person shall offer a public official ..." (emphasis added) indicating that it is irrelevant whether the person charged is a private citizen or public official. 65 Pa C.S.A. § 403(b) (1989). Heistand's argument, therefore, lacks merit.

**6.** At trial, Heistand tried to characterize this payment as a loan to Donahue. To support this characterization Heistand offered testimony of both himself and Donahue that Donahue personally dropped off a payment of $1,500.00 one week after the loan was made along with the returned check dated August 17, 1993. The prosecution, however, established that Donahue was on vacation in New Jersey on that date. In addition, there was no evidence of any loan terms and the balance of the loan was not repaid until after Donahue and Heistand were subpoenaed to testify at the grand jury.

made the offer to pay for Donahue's dues, and again at a later date, Donahue authorized disbursements without first obtaining the architect's consent, in violation of Heistand's contract with Bensalem. Finally, subsequent to the payment of Donahue's dues, Heistand was awarded another contract by Bensalem, albeit by sealed bid. Thus, the jury apparently concluded that Heistand had tempted Donahue with forbidden fruit, a membership to Spring Mill Country Club worth $7,285.00, the purpose of which was to gain preferential treatment on the present project as well as future ones.

Viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences therefrom, we conclude that a jury could find that Heistand paid for Donahue's membership and dues with the understanding that Donahue, in his capacity as facilities manager, would be influenced thereby. Thus, we are satisfied that the elements of section 403(b) have been proven beyond a reasonable doubt. *Jarman supra; Swann, supra.*

Heistand also contends that the jury improperly weighed his testimony that he did not possess an "understanding" his payment of Donahue's dues would influence Donahue's judgment. A mere conflict in the testimony of witnesses, however, does not render the evidence insufficient because "it is within the province of the fact finder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence." *Commonwealth v. Moore,* 436 Pa.Super. 495, 501, 648 A.2d 331, 333 (1994) (citations omitted). Due to the discrepancies in testimony regarding whether the payment was a loan as well as the difficulty in believing that someone would loan or give another person whom he hardly knew over seven thousand dollars, the jury was well warranted in discounting Heistand's testimony. *Moore, supra.*

Judgment of sentence affirmed.