**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Derrick DAVIS, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 2, 1999.
Filed Nov. 24, 1999.
Reargument Denied Feb. 1, 2000.

Aaron C. Finestone, Philadelphia, for appellant.

Catherine Marshall, Assistant District Attorney, Philadelphia, for Com., appellee.

Before POPOVICH, ORIE MELVIN, JJ., and CIRILLO, President Judge Emeritus.

POPOVICH, J.:

¶ 1 Appellant, Derrick Davis, appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following his convictions of possession of a controlled substance, possession of a controlled substance with intent to manufacture or deliver, possession of drug paraphernalia and criminal conspiracy. On appeal, appellant challenges

whether trial counsel was ineffective for failing to litigate his motion to suppress and whether the evidence was sufficient to sustain his conviction for possession of a controlled substance. For the reasons that follow, we reverse and remand for a new trial.

¶ 2 The facts and procedural history may be summarized as follows. On October 24, 1996, John Taylor, the manager of the West Penn Terrace apartment building located in Philadelphia, was making his yearly repair and maintenance inspection of the apartments. Notices of the date of the inspection were posted throughout the building. During his inspection of apartment 401, which had been recently leased on October 10, 1996, by Maurice Milner, Mr. Taylor observed drugs and drug paraphernalia on the kitchen table. Mr. Taylor immediately contacted the Philadelphia police and four police officers from the Narcotic Field Unit, Central Division responded. Mr. Taylor met the officers in the lobby of the building. He then proceeded to lead the officers to apartment 401 opening the door with a pass key. The officers followed Mr. Taylor into the one-bedroom apartment where they observed on the kitchen table five plastic bags containing crack cocaine, a scale, razor blades, a glass plate with residue, packaging material and a prescription bottle with appellant's name on it. The officers also observed a denim jacket draped over one of the kitchen chairs.

¶ 3 Lieutenant Russell Rice then instructed Officer Richard Dominick to obtain a search and seizure warrant for the premises while the remaining officers secured the apartment. Shortly after Officer Dominick left the premises, appellant attempted to open the door to apartment 401 with a key. Lieutenant Russell displayed his badge and identified himself. In response, appellant attempted to close the door and flee down the hallway. The officers were able to apprehend appellant and place him under arrest while recover-

ing $800 in United States currency from appellant's person. The officers and appellant remained at the apartment until Officer Dominick returned with the search and seizure warrant. Upon execution of this warrant, the officers recovered the items on the kitchen table and $500 in United States currency found in the denim jacket. From the bedroom, the police recovered firearms, an identification tag bearing appellant's name and various items of designer clothing similar to the size and style worn by appellant.

¶ 4· Prior to appellant's trial, his trial counsel filed a motion to suppress all evidence seized during the search. However, on the day of trial, trial counsel withdrew the motion. On September 25, 1997, appellant was convicted in a waiver trial of all charges. Represented by new counsel, appellant filed a motion for extraordinary relief claiming trial counsel was ineffective for failing to pursue the motion to suppress. On February 11, 1998, the trial court denied appellant's motion and sentenced him to a mandatory minimum term of imprisonment on the possession with intent to manufacture and deliver conviction to three (3) to six (6) years imprisonment. No further penalty was imposed on the remaining convictions. This appeal followed.

¶ 5 Appellant presents two questions for our review:

1. WAS TRIAL COUNSEL INEFFECTIVE FOR FAILING TO LITIGATE THE MOTION TO SUPPRESS?

2. WAS THE VERDICT [ ] BASED ON INSUFFICIENT EVIDENCE OF CONSTRUCTIVE POSSESSION?

Appellant's brief at 5.

¶ 6 In appellant's first issue, he challenges whether trial counsel was ineffective for failing to litigate the motion to suppress.[1] The standard for determining

---

1. We recognize that defendants charged with possessory offenses have automatic standing

whether counsel was ineffective is well-settled. The law presumes that counsel was not ineffective, and appellant bears the burden of proving otherwise. *Commonwealth v. Hall*, 549 Pa. 269, 290, 701 A.2d 190, 200 (1997), *cert. denied*, 523 U.S. 1082, 118 S.Ct. 1534, 140 L.Ed.2d 684 (1998). To establish an ineffective assistance of counsel claim, *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987) and its progeny require appellant to satisfy a three-prong inquiry: (1) whether the underlying claim is of arguable merit; (2) whether or not counsel's acts or omissions had any reasonable strategic basis designed to advance the interests of appellant; and (3) whether there is a reasonable probability that the outcome of the proceedings would have been different, but for the errors and omissions of counsel. *Commonwealth v. Kimball*, 555 Pa. 299, 312, 724 A.2d 326, 333 (1999).

¶ 7 All of appellant's claims center upon his allegation that the police conducted a warrantless search of the apartment. He contends that he had a legitimate expectation of privacy in the apartment, and the search violated his Fourth Amendment rights. Appellant also contends that John Taylor, the building manager, did not have the authority to consent to a warrantless search.

■ ¶ 8 The Fourth Amendment of the United States Constitution protects people from unreasonable **governmental intrusions** into their legitimate expectations of privacy. *Commonwealth v. Rathfon*, 705 A.2d 448, 450 (Pa.Super.1997) (emphasis added), *appeal dismissed*, 555 Pa. 588, 725 A.2d 1209 (1999). Though the Fourth Amendment protects people rather than places, the determination of whether an actual and reasonable expectation of privacy existed usually requires some reference to place. *Commonwealth v. Ellis*, 379 Pa.Super. 337, 549 A.2d 1323, 1326 (1988), *appeal denied*, 522 Pa. 601, 562

A.2d 824 (1989). An expectation of privacy is present when an individual, by his conduct, exhibits an actual expectation of privacy and that the subjective expectation is one that society is prepared to recognize as reasonable. *Commonwealth v. Brundidge*, 533 Pa. 167, 173, 620 A.2d 1115, 1118 (1993). The controlling consideration is whether the individual contesting the search and seizure has a legitimate expectation of privacy in the premises or area searched. *Commonwealth v. Oglialoro*, 525 Pa. 250, 579 A.2d 1288 (1990). This determination is to be accomplished upon a totality of the circumstances. *Commonwealth v. Ferretti*, 395 Pa.Super. 629, 577 A.2d 1375, 1378 (1990), *appeal denied*, 527 Pa. 597, 589 A.2d 688 (1991).

■ ¶ 9 Even though appellant was not the named lessee of the premises on the lease, we find the evidence of record demonstrates appellant had a legitimate expectation of privacy in the premises. Appellant carried a key to gain access to apartment 401. Located inside the apartment were appellant's belongings which included his clothes, identification tag and prescription medicine. *See Commonwealth v. Brundidge*, 533 Pa. at 173, 620 A.2d at 1118 (finding guest in motel room has legitimate expectation of privacy in room during period of time it is rented); *Commonwealth v. Evans*, 488 Pa. 38, 40, 410 A.2d 1213, 1215 (1979) (finding overnight guest had legitimate expectation of privacy in host's apartment); *Commonwealth v. O'Neal*, 287 Pa.Super. 238, 429 A.2d 1189 (1981) (same).

■ ¶ 10 Presently, the initial entry into the apartment was not conducted by a governmental official, but by a private individual who was authorized to enter the premises on the day in question. The protections afforded by the Fourth Amendment apply only to the actions of governmental authorities rather than the

to litigate a suppression motion. *Commonwealth v. Carlton*, 549 Pa. 174, 179, 701 A.2d 143, 145 (1997).

conduct of private parties. *Rathfon*, 705 A.2d at 451 (citing *Commonwealth v. Borecky*, 277 Pa.Super. 244, 419 A.2d 753, 755–756 (1980)). The lease signed by Maurice Milner, the actual tenant of apartment 401, provides that the "Landlord and anyone allowed by Landlord may enter the leased unit after first notifying Tenant." (Commonwealth Exhibit 1). In the present case, Mr. Taylor testified at trial that he posted notices for his annual inspection of all of the fifty-three (53) apartments in the West Penn Terrace apartment building in order to make necessary repairs. The notice also requested the tenants to contact him if the time for inspection was not suitable. Neither appellant nor Mr. Milner ever informed Mr. Taylor that he could not perform the inspection on October 24, 1996. Therefore, Mr. Taylors' presence in apartment 401 was authorized, at least, to inspect and repair the apartment.

¶ 11 We next turn to the question of whether the police's entry into apartment 401 upon Mr. Taylor's invitation violated appellant's constitutional rights of privacy. Warrantless searches of residences are *per se* unreasonable unless justified by a specific exception to the warrant requirement. *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639, 650–651 (1980). However, it is firmly established that a warrantless search of property is permitted when consent is given by a third party possessing "common authority" over the premises or effects sought to be inspected. *United States v. Matlock*, 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 993 n. 7, 39 L.Ed.2d 242, 250 n. 7 (1974). *Commonwealth v. Latshaw*, 481 Pa. 298, 392 A.2d 1301 (1978), *cert. denied*, 441 U.S. 931, 99 S.Ct. 2050, 60 L.Ed.2d 659 (1979).

¶ 12 "Common authority" of a third-party to consent to a search "rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Matlock*, 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7, 39 L.Ed.2d at 250 n. 7. Such common authority is not implied by a mere property interest such as that of a landlord. *Id.* To that end, "a landlord or lessor cannot consent to a search of a tenant's premises, regardless of the lessor's right to enter and inspect." *Commonwealth v. Lowery*, 305 Pa.Super. 66, 451 A.2d 245, 247 (1982), citing *Commonwealth v. Berry*, 265 Pa.Super. 319, 401 A.2d 1230, 1232 n. 3 (1979), and *Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961). *See also State v. Sedrel*, 184 Ill.App.3d 1078, 132 Ill.Dec. 870, 540 N.E.2d 792, 793–794 (1989); *State v. Kramer*, 204 Ill.App.3d 1011, 150 Ill.Dec. 124, 562 N.E.2d 654, 656–658 (1990); *State v. Boorem*, 184 Colo. 233, 519 P.2d 939 (1974); *State v. Birdsong*, 66 Wash.App. 534, 832 P.2d 533, 536–537 (1992).

¶ 13 Presently, there is no evidence to suggest that Mr. Taylor possessed the "common authority" over the property which is necessary to consent to the search by the police of the apartment. Taylor's right to occupancy was neither equivalent to nor greater than appellant's. The fact that he had authority under the lease to enter the apartment to inspect or repair the premises and had given notice of the up-coming inspection did not permit the police to disregard appellant's Fourth Amendment rights by accepting Mr. Taylor's invitation to enter the apartment, thereby subjecting appellant to an unreasonable search and seizure of evidence. *See United States v. Warner*, 843 F.2d 401, 403 (9th Cir.1988)(even if landlord could enter to make repairs, he could not consent to police search); *State v. Hodges*, 287 N.W.2d 413, 415 (Minn.1979)(even though lease permitted landlord to retain key and to enter premises to make repairs and show to prospective tenants, landlord could

not consent to search premises); *Blanco v. State,* 438 So.2d 404, 405 (Fla.App.1983) (landlord's right to enter premises to inspect and spray for insect infestations does not authorize him to let police into apartment).[2]

¶ 14 Although Mr. Taylor had the authority to enter and inspect the premises for maintenance reasons, we find that such authority, granted for a specifically limited purpose, does not equate to "common authority" over the apartment for Fourth Amendment purposes. *See United States v. Brown,* 961 F.2d 1039, 1041 (2d Cir. 1992) (officer's belief that homeowner's limited authority to enter premises for specific purpose gave rise to general authority to consent to search apartment was a mistake of law; therefore, search of apartment based upon homeowner's consent was illegal).

¶ 15 In rendering our decision, we are guided by the United State Supreme Court's decision in *Chapman v. United States,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961). Therein, the landlord noticed the strong "odor of [whiskey] mash" when he went to the house to invite his new tenant to church. He then called police and advised them of his observations. The landlord then returned to the house with the police and permitted them to enter the house by forcing open a window. An illegal whiskey distillery was found inside the house.

¶ 16 In rejecting the state's argument that the landlord had the authority to consent to the search, the United States Supreme Court held that to permit such a search "without a warrant would reduce the [Fourth] Amendment to a nullity and leave [tenants'] homes secure only in the discretion of the [landlords]." *Chapman,* 365 U.S. at 617, 81 S.Ct. at 780, 5 L.Ed.2d at 833, quoting *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948).

¶ 17 Further, the United States Supreme Court has condemned a warrantless search where the police had abundant opportunity to obtain a warrant and there were no exigencies requiring immediate entry into the premises. *Taylor v. United States,* 286 U.S. 1, 6, 52 S.Ct. 466, 467, 76 L.Ed. 951, 953 (1932). *See also Commonwealth v. White,* 543 Pa. 45, 53–57, 669 A.2d 896, 901–902 (1995) (warrantless search of automobile which officers reasonably believed to contain narcotics was unconstitutional where officers could have obtained warrant and no exigencies existed). Presently, there was no reason to justify the warrantless search of appellant's apartment. The officers simply should have secured the premises and obtained a warrant based upon Mr. Taylor's observations.

¶ 18 The Commonwealth argues that "the police did not conduct any search or seizure at the time they were invited into the premise." Commonwealth Brief, p. 11. While the officers may not have "searched" the apartment immediately after the manager let them inside, the fact remains that the police would not have been able to see the contraband in "plain view" had they not entered the premises without a warrant. We remind the Commonwealth that evidence may be seized by the police when it is in "plain view" *only* if the police observe the evidence from a vantage point which they are legally entitled to be. *Commonwealth v. Graham,* 554 Pa. 472, 479–481, 721 A.2d 1075, 1079 (1998). Presently, the contraband in appellant's apartment came into "plain view" only as a result of the officers' unlawful entry in that Mr. Taylor had insufficient authority to open the apartment door and

---

2. In light of clear authority holding that generally, a landlord does not have the authority to consent to a search of his lessee's residence and the facts currently before us, we are convinced that the police could not have reasonably believed that the apartment manager had "apparent authority" to consent to the search. *Illinois v. Rodriguez,* 497 U.S. 177, 189, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148, 161–162 (1990) (setting forth test for determining whether a person has apparent authority to consent to a search).

allow them to view its interior. *See Texas v. Brown,* 460 U.S. 730, 737, 103 S.Ct. 1535, 1541, 75 L.Ed.2d 502, 510–511 (1983).

¶ 19 The present case demonstrates the problems of the police proceeding into a premises without a warrant. The evidence which the police seized as a result of Mr. Taylor's consent to enter the apartment could have easily been seized legally via the execution of a valid warrant based upon the information provided by Mr. Taylor. Presently, the police simply should have secured the premises **without entering it** and waited for the issuance of a warrant based upon the apartment manager's observations. *See e.g., Commonwealth v. Rivera,* 273 Pa.Super. 105, 416 A.2d 1111, 1112 (1979) (where no exigencies exist to justify a warrantless search, police should have secured premises and obtained a warrant prior to search; since no warrant was obtained prior to search of apartment, evidence should have been suppressed). Rather, the officers chose to enter the apartment illegally and view the contraband before proceeding to obtain a search warrant. To permit a warrantless search in this situation, we believe, emasculates the protections afforded to appellant and all citizens by the United States and Pennsylvania Constitutions.

■ ¶ 20 Since appellant's suppression claim is meritorious, we cannot contemplate any viable reason why counsel chose not to litigate it, and we find counsel's failure to seek suppression clearly prejudiced appellant. Accordingly, we find counsel was ineffective, and we must remand for a new trial.

■ ¶ 21 However, before we may remand for a new trial, we must address appellant's claim that the evidence was insufficient to support his conviction for possession of a controlled substance. In evaluating a challenge to the sufficiency of the evidence, we must determine whether viewing the evidence in the light most favorable to the verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. *Commonwealth v. Heistand,* 454 Pa.Super. 482, 685 A.2d 1026, 1028 (1996). The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. However, any questions or doubts are to be resolved by the factfinder unless the evidence is so weak and inconclusive that as a matter of law, no probability of fact may be drawn from the circumstances. *Commonwealth v. Morales,* 447 Pa.Super. 491, 669 A.2d 1003, 1005 (1996). The trier of fact is free to believe all, part or none of the evidence. *Commonwealth v. Price,* 416 Pa.Super. 23, 610 A.2d 488, 489 (1992).

■ ¶ 22 Since the drugs were not found on appellant's person, the Commonwealth is required to prove constructive possession. *Commonwealth v. Bruner,* 388 Pa.Super. 82, 564 A.2d 1277 (1989). Constructive possession has been defined as "the power to control the contraband and the intent to exercise control over the contraband." *Commonwealth v. Austin,* 428 Pa.Super. 466, 631 A.2d 625, 629 (1993) (citing *Commonwealth v. Macolino,* 503 Pa. 201, 206, 469 A.2d 132, 134 (1983)). An intent to maintain such conscious dominion may be inferentially proven by the totality of the circumstances. *Id.* at 206, 469 A.2d at 134. Additionally, in cases "where more than one person has equal access to where drugs are [found], **presence alone** in conjunction with such access will not prove conscious dominion over the contraband." *Commonwealth v. Davis,* 331 Pa.Super. 285, 480 A.2d 1035, 1045 (1984) (citations omitted) (emphasis in original).

■ ¶ 23 The present case provides sufficient evidence from which a reasonable inference of power and intent to control can be drawn. Here, appellant entered apartment 401 using his own key. When appellant was apprehended, the police found $800 in United States currency on his person. Situated on the kitchen table were five plastic bags containing 61.5

grams of crack cocaine, a scale, packaging materials, a glass plate with residue and razor blades. Amidst all of these items was a prescription bottle belonging to appellant. The denim jacket lying on the kitchen chair contained $500 in United States currency. From the bedroom, the police recovered clothing which appeared to be the same style and size worn by appellant, an identification badge bearing appellant's name as well as firearms. Taking into account the totality of the circumstances in this case, we find the evidence was sufficient to permit the fact-finder to infer that appellant possessed the crack cocaine.

¶ 24 Judgment of sentence reversed. Case remanded for trial. Jurisdiction relinquished.

¶ 25 ORIE MELVIN, J. files a Concurring and Dissenting Opinion.

Concurring and Dissenting Opinion by ORIE MELVIN, J.

¶ 1 I agree with the majority that the evidence was sufficient to sustain the Appellant's conviction for possession of a controlled substance. However, I respectfully dissent from the majority's conclusion that the police's entry into apartment 401 violated the Appellant's constitutional rights of privacy.

¶ 2 "[A] warrantless search may be made with the consent of a third party who possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected." *Commonwealth v. Gibbons*, 379 Pa.Super. 285, 549 A.2d 1296, 1300 (1988), *appeal denied,* 522 Pa. 601, 562 A.2d 825 (1989). However, absent abandonment, a landlord's consent to a search of leased premises is generally not effective against a tenant. *Commonwealth v. Berry*, 265 Pa.Super. 319, 401 A.2d 1230, 1232 n. 3 (1979); *Commonwealth v. Lowery*, 305 Pa.Super. 66, 451 A.2d 245 (1982).

¶ 3 I believe the facts of this particular case present an exception to the general rule prohibiting a landlord from consenting to a search of a tenant's premises. Clearly, this is not a case where a landlord who retains a general right to inspect and has no knowledge of any illegal activity consents to the search of a tenant's property. *See Commonwealth v. Berry, supra.* (holding lessor lacked authority to consent to police search of garages leased by defendant when lessor's inspection right was narrow in scope and did not rise to the level of joint control which is necessary for valid consent by a joint possessor). In such a case, the consent would undoubtedly be invalid. In this case, the Appellant had notice Mr. Taylor would be entering his premises. In spite of this notice, the Appellant permitted illegal substances and drug paraphernalia to be displayed in plain view. Upon these facts, I find the Appellant "assumed the risk" that Mr. Taylor might permit the premises to be entered and searched. *United States v. Matlock*, 415 U.S. 164, 172, n. 7, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

¶ 4 The majority relies on *Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961), to support its finding Mr. Taylor did not have the authority to consent to the search. I find *Chapman* is distinguishable. In *Chapman*, the landlord smelled a strong odor of "whiskey mash" coming from his tenant's home. Although he had no first hand knowledge of illegal activity taking place on the premises, he informed the police of his observations and consented to their forcible entry into the premises through an unlocked bathroom window. Upon entry, the police found an illegal distillery, which they subsequently seized without a warrant.

¶ 5 Unlike *Chapman*, Mr. Taylor was authorized to enter the Appellant's premises. In compliance with the terms of the lease, the landlord posted notices throughout the apartment complex providing he would be making inspections and repairs on a given date. While conducting an inspection of apartment 401, Mr. Taylor observed illegal contraband on the kitchen

table. Thus, contrary to the landlord in *Chapman*, Mr. Taylor had first hand knowledge illegal activity was occurring in the apartment when he reported his findings to the police. When the police arrived, Mr. Taylor led them to the apartment where they observed the drugs and drug paraphernalia on the kitchen table. Shortly thereafter, one officer left the scene to obtain a search warrant and the remaining officers secured the premises. Approximately ten minutes later, the Appellant attempted to enter the apartment. Upon his arrest, the officers waited in the apartment until the search warrant had been obtained.

¶ 6 Upon my review of the record, I find Mr. Taylor had a sufficient relationship to the premises to provide the police with the necessary consent to enter apartment 401. While therein, the police did not conduct a search of the premises. Instead, they secured the premises and waited until a search warrant could be obtained. Under the particular facts of this case, I find that if a motion to suppress had been filed, it would have been properly denied. Accordingly, I respectfully dissent.