J-S24015-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| REUBEN TALLEY | : | |
| | : | |
| Appellant | : | No. 294 WDA 2020 |

Appeal from the Judgment of Sentence Entered January 10, 2020
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001423-2019

BEFORE:   DUBOW, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED: DECEMBER 8, 2021**

Appellant, Reuben Talley, appeals from the Judgment of Sentence entered after a jury found him guilty of multiple firearms offenses.  He challenges the sufficiency of the evidence.  After careful review, we affirm.

We glean the following factual and procedural history from the trial court's Pa.R.A.P. 1925(a) Opinion and the certified record.  On March 24, 2019, police responded to reports of a robbery and gunshots fired in the area of East 22nd and Wallace Streets in Erie.  When officers arrived, they saw shell casings and a window screen lying on the sidewalk in front of 2111 Wallace Street.  An upstairs window screen was missing.  Police recovered a Glock .40 pistol from the basement.

_____

[*] Former Justice specially assigned to the Superior Court.

A video camera installed outside a business across the street from 2111 Wallace Street recorded two men fleeing south and showed multiple gunshot flashes coming out of the upstairs window of the building at 2111 Wallace Street.  Many bullets hit the outside of the home across the street where Clemence Krakowski lived. One of the bullets pierced through a window in Mr. Krakowski's living room window where he was sitting at his computer. The bullet went through a clipboard Mr. Krakowski was holding, hit his computer screen, and deflected off, grazing him on the side of his torso.

Jabril Hooks and Brent Rea, the residents of the upstairs apartment at 2111 Wallace Street, told investigating police officers that two men with guns had robbed and pistol-whipped Mr. Hooks just outside the back door of the building.[1]  Mr. Rea reported that he saw Appellant, who was staying with them, holding a Glock handgun before and after hearing gunshots.  Mr. Hooks told the officers that Appellant fired the gun that evening but that he (Mr. Hooks) did not actually see the gun.

The Commonwealth charged Appellant with Aggravated Assault, Discharge of a Firearm Into an Occupied Structure, Recklessly Endangering Another Person, Criminal Mischief, Possessing an Instrument of Crime, and Persons Not to Possess Firearms.[2]  Appellant elected to represent himself after

---

[1] Appellant and Jabril Hooks refer to one another as "Cuz."

[2] 18 Pa.C.S. §§ 2702(a)(1), 2707.1(a), 2705, 3304(a)(5), 907(a), and 6105(a)(1), respectively.

the trial court conducted a thorough waiver colloquy with him. He proceeded to a jury trial with stand-by counsel.

At trial, the Commonwealth presented testimony from Messrs. Krakowski, Hooks, and Rea who testified regarding the events leading up to and including the shooting incident. Hooks denied ever telling detectives that Appellant shot the gun.

The investigating detective, Michael Hertel, testified regarding recorded conversations he had with Hooks, Rea, and Appellant. The Commonwealth played relevant portions of their recorded interviews for the jury, and the court admitted the recordings into evidence. In addition, Detective Hertel testified about a recorded jailhouse phone conversation Appellant had with Hooks' father where Appellant tells him he doesn't regret anything. In recounting the event, Appellant told Hooks' father, "I would not let him up the fucking steps. I'm like, Cuz, move to the side, I'm ready to let this Jones go." **See** N.T., 11/15/19, at 24, 51.[3]

Detective Hertel further testified that the gun found in the basement was not registered to Appellant, and that it belonged to someone other than the home's residents. On cross-examination, Detective Hertel could not

---

[3] Detective Hertel and Appellant engaged in extensive discussion at trial on the meaning of the word "Jones," the fact that the detective had heard a firearm referred to on the street as a "Jones" over his many years as a police officer, and his considering the meaning of "Jones" as used in the context of Appellant recounting the events that occurred. On redirect, Detective Hertel reiterated that Appellant himself had said during his discussion with Detective Hertel, "I know there wasn't a Jones the other day. I know there wasn't a pistol there." **See** N.T., 11/15/19, at 33-36, 50.

explain why the police officers did not contact the owner of the firearm found in the basement.

A forensic expert from the Pennsylvania State Police testified that he found gunshot residue on samples of clothing from Hooks, Rea, and Appellant. A firearms expert testified that he tested the Glock found in the basement, compared .40 caliber ammunition casings found on the street, and concluded the casings found on the street had been shot from the Glock pistol found in the basement at 2111 Wallace Street. Police Officer Jason Russell, who collected evidence at the scene, testified, *inter alia*, that in addition to twelve .40 caliber bullet casings found on the street, he also found an unspent bullet in the kitchen within three to four feet of the back stairs leading to the back door, and explained that it would have been ejected when the gun was cocked. N.T., 11/14/19, at 29.

Appellant testified that he did not shoot a firearm that night, and that he had no reason to fire a firearm. He also stated that he was not a snitch. N.T., 11/15/19, at 59. On cross-examination, Appellant stated that he saw the two robbers at the bottom of the steps pointing guns at him. He also admitted that he said on one of the calls from prison, "I did what I did." **Id**. at 60.[4]

---

[4] The parties stipulated that Appellant was a person not to possess a firearm.

Following the three-day trial, the jury convicted Appellant of the above crimes.[5]

On January 10, 2020, the court imposed mitigated sentences aggregating to a term of 6½ to 13 years' incarceration. Appellant filed a post-sentence motion, which the trial court denied.

On February 24, 2020, Appellant *pro se* filed a timely Notice of Appeal and requested the appointment of counsel. The trial court appointed James Pitnoyak, Esq., as appellate counsel and directed him to file a Pa.R.A.P. 1925(b) statement. After granting counsel four extensions, the court granted a final extension and ordered Appellant to file the Rule 1925(b) Statement by October 9, 2020. Appellant filed the Rule 1925(b) Statement on October 15, 2020, raising challenges to both the sufficiency and weight of the evidence supporting his convictions. The court filed a responsive Rule 1925(a) Opinion.[6]

---

[5] The court had bifurcated the charge of Persons Not to Possess Firearms. After the jury announced the guilty verdicts on the other offenses, the court sent the jury back to deliberate on the persons not to possess charge. They returned a guilty verdict shortly thereafter.

[6] The trial court first concluded that, because Appellant had filed an untimely Pa.R.A.P. 1925(b) Statement, Appellant had waived the issues presented. **See** Tr. Ct. Op., filed 11/9/20, at 3-4, citing **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) and **Commonwealth v. Castillo**, 888 A.2d 775 (Pa. 2005). The court, nonetheless, addressed the merits of the issues that Appellant had presented in his Rule 1925(b) Statement.

In 2009, this Court recognized that the 2007 amendment to Rule 1925 somewhat altered the bright line rule established in **Lord** and **Castillo**, so that

Appellant filed two requests for extensions of time to file his appellate brief. Subsequently, Appellant hired private counsel, Tina Freyling, Esq., and the court granted appointed counsel's motion to withdraw. After receiving an extension from this Court, Attorney Freyling filed Appellant's brief, raising the following issue for our review:

> Did the Commonwealth present insufficient evidence to sustain Appellant's conviction for all charges when the evidence did not establish any sufficient connection between the appellant and the firearm in question[?]

Appellant's Br. at 2.

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). "[O]ur standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Hutchinson*, 164 A.3d 494, 497 (Pa. Super. 2017) (citation omitted). In reviewing a sufficiency challenge, we determine "whether the evidence at trial,

---

counsel's complete failure to file a Rule 1925(b) Statement as ordered constituted *per se* ineffective assistance for which the proper remedy is remand for the filing of the Rule 1925(b) statement *nunc pro tunc*. *Commonwealth v. Burton*, 973 A.2d 428, 430-432 (Pa. Super. 2009). Relevant to this appeal, the *Burton* Court recognized that the untimely filing of a Rule 1925(b) should "be treated no differently" than a statement not filed at all, but also recognized that efficiency of the proceedings is paramount. The Court, thus, held that "if there has been an untimely filing, this Court may decide the appeal on the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal." *Burton*, 973 A.2d 433. The *Burton* holding is precedential. Here, because the trial court prepared an opinion addressing the merits of Appellant's issues, we will decide this appeal on the merits.

and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all elements of the offense beyond a reasonable doubt." *Commonwealth v. May*, 887 A.2d 750, 753 (Pa. 2005). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017). "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." *Id.*

In his brief, Appellant does not challenge the specific statutory elements of any of his crimes. Rather, he contends that "the Commonwealth's evidence did not sufficiently place [Appellant] in the position of having the firearm in his possession at any time" and did not "connect [Appellant] to the discharge of the firearm[.]" Appellant's Br. at 11-12. "[T]hus the evidence presented on the charges other than possession was also not sufficient to prove that [Appellant] was the individual who committed the crimes in question." *Id*. at 12.

This Court has held that "[p]ossession can be found by proving actual possession, constructive possession[,] or joint constructive possession." *Commonwealth v. Heidler*, 741 A.2d 213, 215 (Pa. Super. 1999). Where a defendant is not in actual possession of the recovered firearm, the

Commonwealth must establish that the defendant had constructive possession to support the conviction. **Commonwealth v. Hopkins**, 67 A.3d 817, 820 (Pa. Super. 2013).

"We have defined constructive possession as conscious dominion." **Id.** (citation omitted). "We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control." **Id.** (citation omitted). "To aid application, we have held that constructive possession may be established by the totality of the circumstances." **Id.** (citation omitted).

It is well established that, "[a]s with any other element of a crime, constructive possession may be proven by circumstantial evidence." **Commonwealth v. Haskins**, 677 A.2d 328, 330 (Pa. Super. 1996). In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the weapon. **See**, **e.g.**, **Commonwealth v. Davis**, 743 A.2d 946, 953-54 (Pa. Super. 1999) (holding evidence was sufficient to prove constructive possession over drugs found in common areas of apartment where defendant entered apartment using his own key, possessed $800 in cash on his person, and police recovered defendant's identification badge, size-appropriate clothing, and firearms from a bedroom).

It is insufficient to infer "dominion and control" when the Commonwealth only provides evidence of the defendant's presence. **See Commonwealth v.**

*Valette*, 613 A.2d 548, 551 (Pa. 1992) (holding mere presence at a place where contraband is found or secreted is insufficient standing alone to prove constructive possession). Moreover, if the only inference that the fact-finder can make from the facts is a suspicion of possession, the Commonwealth has failed to prove constructive possession. *Id.* "It is well settled that facts giving rise to mere 'association,' 'suspicion' or 'conjecture,' will not make out a case of constructive possession." *Id.*

Here, the evidence established more than a "suspicion of possession" or a "mere association." As the learned trial court clearly and concisely concluded in its Rule 1925(a) Opinion after detailing the testimony and other evidence presented at trial:

> A review of the totality of the of the evidence, conducted in the light most favorable to the Commonwealth, leads to the reasonable inference and conclusion that Appellant had the intent and ability to control the firearm. Specifically, the testimony established that gunshots were fired from the upstairs living room window of 2111 Wallace Street. N.T. Day 2 at 206-207. The recovered bullet casings were determined to have been fired from a .40 caliber firearm. N.T. Day 2 at 5-6, 142. A Glock .40 caliber pistol was found in the basement of 2111 Wallace Street. N.T. Day 2 at 21. The basement was shared by the upstairs and downstairs apartments of 2111 Wallace Street and accessible by a shared hallway on the main floor. N.T. Day 2 at 20.
>
> Immediately prior to the shots being fired, Appellant was observed in the upstairs apartment of 2111 Wallace Street holding a Glock .40 caliber pistol. N.T. Day 2 at 84-85. Appellant was placed in the living room by witnesses at the time of the shooting. N.T. Day 2 at 158; N.T. Day 3 at 8-11, 16. Immediately after the shots were fired, Appellant was again observed in the upstairs apartment holding the Glock .40 caliber pistol. N.T. Day 2, at 90. Appellant exited the apartment via the stairs and shared hallway prior to the police arriving on the scene. N.T. Day 3, at 18.

Gunshot residue tests were performed on an article of Appellant's clothing. Characteristic particles were found on the sleeves of Appellant's t-shirt and indicative particles were found on the chest of the t-shirt. N.T. Day 3, at 122. [ . . . ] During his police interview, Appellant referred to the firearm as a "Jones," and did so again during recorded prison phone calls in which he appeared to accept responsibility for the incident. N.T. Day 3 at 19-25.

Also compelling is that no other resident of the apartment was implicated in the shooting. Although Appellant posits that the other individuals in the residence "may have used and fired the gun," there is an utter lack of evidence to support this claim. Instead, the inference that can be derived from the totality of the circumstances is that it was more likely than not that Appellant possessed and used the firearm.

The evidence, although circumstantial, is sufficient to establish Appellant was the individual who possessed and used the firearm. Therefore, Appellant's claim [that] the Commonwealth failed to present sufficient evidence to prove constructive possession of the firearm lacks merit and must be dismissed.

Tr. Ct. Op., Nov. 9, 2020, at 16-17.[7]

Considering the totality of the circumstances and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court's conclusion that the Commonwealth proffered sufficient evidence from which the jury could draw a reasonable inference that Appellant constructively possessed the firearm. Appellant is not, therefore, entitled to

---

[7] After concluding the evidence was sufficient to establish that Appellant constructively possessed the firearm, the trial court reviewed the specific statutory elements of each of the crimes underlying Appellant's convictions and the evidence presented to prove them and concluded that sufficient evidence supported each conviction. Tr. Ct. Op., Nov. 9, 2020, at 19-22.

relief on the sufficiency challenge presented in this appeal. We, thus, affirm Appellant's Judgment of Sentence.

Judgment of Sentence affirmed.

Judge King joins the memorandum.

President Judge Emeritus Stevens concurs in result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/8/2021